

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2003

# Ware v. Rodale Press Inc

Precedential or Non-Precedential: Precedential

Docket 02-1533

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ware v. Rodale Press Inc" (2003). *2003 Decisions*. Paper 762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1533

REGINALD D. WARE;
WARE COMMUNICATIONS, INC.

v.

RODALE PRESS, INC.

Ware Communications,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 95-cv-05870)
District Judge: Honorable Herbert J. Hutton

Submitted Under Third Circuit LAR 34.1(a)
January 21, 2003

Before: BECKER, NYGAARD, and AMBRO, Circuit Judges

(Opinion filed: February 28, 2003)

Paul B. Birden, Jr., Esquire
4210 Hamilton Drive
Voorhees, NJ 08043
 Attorney for Appellant

Patrick J. Reilly, Esquire
Paul A. McGinley, Esquire
Gross, McGinley, LaBarre &
 Eaton, LLP
33 South 7th Street, 4th Floor
P.O. Box 4060
Allentown, PA 18105-4060
 Attorneys for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

Appellant Ware Communications, Inc. ("WCI") sued
Appellee Rodale Press, Inc. ("Rodale") for, inter alia, breach
of contract. After repeated noncompliance with discovery
requests and orders, the District Court sanctioned WCI by
precluding it from introducing any evidence of damages at
trial. Because this made it impossible for WCI to establish
a required element of its breach of contract claim, the

District Court dismissed the claim. WCI appeals both the sanction and dismissal. We have jurisdiction pursuant to 28 U.S.C. S 1291, and affirm.

I. BACKGROUND AND PROCEDURAL HISTORY

This case has a lengthy procedural history, much of which is not implicated by this appeal. The relevant events are as follows. In 1992, Reginald Ware and his publishing company, WCI, approached Rodale, also a publishing company, with an idea for a magazine. The parties in December 1993 agreed to publish Rodale's Heart & Soul, a healthy lifestyle magazine directed to African-American women. The operative agreements granted Rodale termination rights upon thirty days notice if advertising sales did not meet budget projections. On July 25, 1995, Rodale informed WCI that it was terminating the contract on this ground. It also advised WCI that a Rodale employee had brought sexual harassment allegations against Reginald Ware personally.

2

WCI and Ware sued Rodale in 1995 in the Eastern District of Pennsylvania for fraudulent misrepresentation, breach of contract, and invasion of privacy. Rodale counterclaimed for sexual harassment. Judge Robert S. Gawthrop III dismissed the fraudulent misrepresentation and breach of contract claims. The parties went to trial on the remaining claims in October 1997, but after the close of Plaintiff 's case-in-chief the District Court granted judgment as a matter of law to Rodale on Ware's invasion of privacy claim. Rodale's sexual harassment counterclaim was submitted to the jury, which found in favor of Ware. WCI and Ware appealed the District Court's dismissal of the breach of contract claim, and our Court reversed and remanded this claim.

On remand, WCI and Ware filed an amended complaint (to be precise, the third amended complaint) alleging breach of contract, misappropriation, breach of the duty of good faith and fair dealing, and breach of fiduciary duty.1 In May 2000 the Court dismissed with prejudice all except WCI's breach of contract claim.2

Even for that remaining claim, there was pretrial wrangling. On June 8, 2000, Rodale forwarded to WCI a Request for Production of Documents and Interrogatories, which included a request for substantiation of WCI's damages calculation. Responses were due one month later. WCI did not respond. On August 24, 2000, one and a half months after the response was due, Rodale filed with the District Court a Motion to Compel. WCI again did not respond.

On September 19, 2000, the District Court entered an Order directing WCI to respond to the June 8, 2000, discovery request and interrogatories within fifteen days. Once more, WCI did not respond within the required time

period. Two days after the deadline had lapsed, WCI sought an extension of time. On October 16, 2000, the parties entered into a Stipulation that extended to October 18,

_____

1. In August 1999, following the death of Judge Gawthrop, the case was reassigned to Judge Herbert J. Hutton.

2. This included the dismissal of Ware personally as a party to the suit.

2000, the deadline for WCI to answer Rodale's outstanding discovery requests. The Stipulation provided that"[s]hould the Plaintiff fail to provide such full and complete responses, the parties agree that the Plaintiff shall be prohibited from presenting any evidence in support of its claim at the time of trial of the within action." WCI timely replied to the Stipulation, but offered the following statement as to its damages calculation: "Plaintiff has not completed its determination of damages. Specifically, documents that are relevant to Plaintiff 's calculation are in the possession of Defendant. Plaintiff will seek to obtain the documents through discovery."

On October 31, 2000, the District Court entered a scheduling Order that provided for discovery to close on January 8, 2001, all dispositive motions to be filed by January 15, 2001, and the case put into the trial pool on January 29, 2001. On November 21, 2000, Rodale sent a letter to WCI indicating dissatisfaction that it had not yet received an adequate damages calculation. Rodale noted that the alleged breach of contract occurred over five years previously. Thus Rodale expected that WCI by this point knew what damages it had suffered, and "therefore request[ed] that [WCI] forthwith provide answers to the interrogatories concerning damages, and provide any documentation you have to support that." If not, Rodale indicated that it would "file a motion in limine at the time of trial asking the Court to prohibit the introduction into evidence of any damages testimony or other evidence." Yet again WCI did not respond.

On January 7, 2002 -- the eve of the trial (set to begin January 14, 2002) and one year (minus one day) after discovery had closed -- WCI filed a pretrial memorandum that included a damages calculation. Rodale responded by a motion in limine to preclude WCI from introducing any evidence of damages at trial. The trial was postponed, and on January 23, 2002, the District Court granted Rodale's motion. Because WCI thus was precluded from introducing any evidence in support of a necessary element of its breach of contract claim, the District Court dismissed the claim. Ware Communications, Inc. v. Rodale Press, Inc., 2002 WL 89604 (E.D. Pa. Jan. 23, 2002). This appeal followed.

## II. EXCLUSION OF EVIDENCE AS A SANCTION

Federal Rule of Civil Procedure 37(b)(2)(B) authorizes a district court to sanction a party's failure to comply with a discovery order by "prohibiting that party from introducing designated matters into evidence." We previously have noted that "[a]lthough the exclusion of evidence for violation of a discovery order is an 'extreme sanction,' " a trial court's decision to do so "will not be disturbed on appeal absent a clear abuse of discretion." In re TMI Litig ., 193 F.3d 613, 721 (3d Cir. 1999) (internal citations omitted).

Exclusion under Rule 37(b)(2)(B) is particularly extreme when the sanction is tantamount to dismissing the claim, as it was here. In Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984), we explained:

> In exercising our appellate function to determine whether the trial court has abused its discretion in dismissing . . . we will be guided by the manner in which the trial court balanced the following factors. . . and whether the record supports its findings: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

(emphases omitted). See also Emerson v. Thiel Coll., 296 F.3d 184, 190-91 (3d Cir. 2002) (applying the Poulis factors). Each factor need not be satisfied for the trial court to dismiss a claim. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988). They "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal . . . is reserved for the instances in which it is justly merited." Poulis, 747 F.2d at 870. And though the sanction may be extreme, the appellate court's standard of review is deferential. In Poulis, for example, "[u]nder these circumstances, although we might not have reached the same result as did this district court judge, we cannot say that the district court abused its discretion in ordering the dismissal." Id.

5

The District Court in this case explained its findings on each of the six Poulis factors, and concluded that:

> [t]he balance weighs in favor of precluding Plaintiff 's evidence on damages, thereby effectively dismissing Plaintiff 's breach of contract claim against Defendant. The Court is mindful that the exclusion of evidence is an "extreme" sanction. However, "[t]he court has authority to employ the 'most severe in the spectrum of sanctions provided by statute' to ensure compliance

with its discovery orders and to deter all parties in this litigation from engaging in discovery misconduct." In the instant case, Plaintiff 's utter failure to provide Defendant with a damages calculation until the eve of trial is inexcusable, particularly in light of the repeated requests by Defendant, Orders of this Court, and the excessive length of time provided for discovery in this case.

2002 WL 89604, at *7 (internal citations omitted). WCI argues on appeal that each of the District Court's findings -- and thus its conclusion as well -- constituted an abuse of discretion.

A. Extent of Plaintiff 's Personal Responsibility

The District Court found that Rodale presented no evidence and made no allegation that WCI -- as opposed to WCI's counsel -- was responsible for the failures to meet discovery deadlines, and therefore this factor does not weigh in favor of precluding the damages evidence. Rodale counters that this finding is contradicted by the record, as Reginald Ware, the alter ego of WCI and the only plaintiff 's witness to testify as to damages, refused on a number of occasions to appear for a scheduled deposition. Notwithstanding, we need not disturb the District Court's finding on this point. Again, no single Poulis factor is dispositive, and even assuming that WCI does not bear responsibility for its counsel's conduct, consideration of the remaining factors still compels affirming the District Court's decision to sanction WCI and dismiss the breach of contract claim.

B. Prejudice to Defendant

The District Court found that Rodale had been "clearly prejudiced by Plaintiff 's counsel's failure to provide specific

6

information and documentation concerning the damages calculation in a timely fashion." Id. The District Court noted that while "prejudice" for the purpose of Poulis analysis does not mean "irremediable harm," the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial. This is a correct statement of law. See Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir. 1988) (rejecting appellant's argument that "the district court should not have dismissed its claim . . . unless the harm to the other parties amounted to 'irremediable prejudice' "). The District Court noted that WCI's failure to provide timely and specific information as to damages caused prejudice to Rodale in the following forms: Rodale had to file two motions (the motion to compel evidence and the motion to preclude evidence at trial); and when WCI finally made some effort to file its damages calculation, it did so only one week before trial and without supporting documentation, impeding Rodale's ability to prepare a full

and complete defense.

WCI's most vigorous arguments on appeal are directed to the District Court's findings on this point. None are persuasive. First, WCI argues that Reginald Ware's deposition testimony on November 20, 2000 -- six weeks before the January 8, 2001 deadline for the close of discovery -- "practically gave [Rodale] a road map of [WCI's] claimed damages and how [Ware] arrived at them." Appellant's Br. at 14. The operative agreements between the parties contain formulas for dividing compensation between WCI and Rodale during the terms of the agreements, in the event of a termination of the agreements for cause, and in the event of a sale of the magazine. Each formula generally provides for a 80%-20% split between Rodale and WCI, but the calculations require factoring in a number of variables involving net profits, cash received, book value, operating deficits, etc. Reginald Ware's deposition testimony arguably gave some indication that claimed damages were derived from the formulas in the agreement, but it did not provide even a reasonably precise estimate of the amount WCI

intended to seek at trial, or what evidence WCI would introduce to establish its claim.3

WCI's second argument is that fault for the delays is more appropriately ascribed to Rodale, or at least to both

_____

3. See, for example, the following exchange:

    Q. What is the dollar amount of damages that you are seeking?

    A. I think it's going to start -- we haven't finalized anything, but I think I should start around 12 million.

    Q. How did you arrive at that figure?

      THE WITNESS: Should I go into this?

      MR. PARRISH: If you want.

      THE WITNESS: Okay. The magazine was sol d in a firesale for four million. Okay. I should be entitled to twenty percent of that which is $800,000. In addition to that, when Rodale stole the magazine -- well, when Rodale breached the contract, we were receiving $40,000 a month. If you factor in $40,000 a month for six years of lost wages, that comes to about 5.3 -- 2, so that's six million there. And in addition to that, when Rodale started the rumor which was -- the false rumor about sexual harassment, which was proven in court that it did not occur, and that Ware Communications did not breach the contract, the damage from that alone should start at about four million,

> which takes us to -- I don't know seven --
> around 11 or so. Then in addition to that, the
> model of the twenty percent of net profits, had
> Rodale not breached the contract, again, the
> magazine was projected to make approximately
> three and a half million dollars a year. And a
> multiple of eight would take that to -- if you
> take three times eight -- takes it to 24, and we
> should be entitled to twenty percent of that,
> which is another five million. So that's where
> I'm, at least, at 12.

App. at 68-70. See also infra Part III (concluding that the deficiencies in WCI's damages evidence were grounds for dismissing its breach of contract claim).

parties. According to WCI, that Rodale waited until January 2002 to inform the District Court it was unprepared to defend against WCI's claimed damages indicates an absence of prejudice. This line of reasoning (or, more to the point, rationalizing) overlooks entirely that Rodale's motion to preclude was prompted by the pretrial memorandum WCI filed in January 2002 on the eve of trial. WCI asserts that the parties were engaged in a " 'paper war' . . . with both sides filing numerous and sundry motions, all of which simply delayed trial and forced the Court to deal with them." Appellant's Br. at 16. This argument underwhelms. As the District Court noted, we have construed prejudice to include the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary. 2002 WL 89604, at *3. Accord Curtis T. Bedwell and Sons, 843 F.2d at 693-94. WCI's eleventh-hour filing of its damages calculation left Rodale with approximately one week to evaluate and rebut the information. In this context, it was hardly an abuse of discretion for the District Court to conclude that"Plaintiff 's actions have clearly resulted in prejudice to Defendant." 2002 WL 89604, at *3.

C. History of Dilatoriness

D. Willful and Bad Faith Conduct

The District Court addressed the third and fourth Poulis factors independently -- and found that both supported sanctions -- but WCI addresses them as a single concept on appeal. As to dilatoriness, the District Court noted that after WCI's counsel failed to respond to Rodale's June 8, 2000 Request for Production of Documents and Interrogatories, Rodale had to file a Motion to Compel a month and a half after responses were due. WCI did not respond to the discovery requests nor answer the motion to compel. The District Court entered an Order on September 19, 2000, directing WCI to respond within fifteen days. As noted, WCI once more failed to respond timely. The parties agreed to a Stipulation, which included the threat of exclusion of evidence should WCI provide incomplete

information, but WCI proceeded to answer that it had not completed its determination of damages. Concluded the District Court: "Therefore, by October of 2000, eight

months since the lawsuit commenced in this Court, and five years after the breach of contract action was originally brought before a court of this District, Plaintiff still had not completed its determination of damages." Id. at *4. As to willfulness and bad faith, the District Court pointed to many of the same violations by WCI, and also noted that "[n]o excuse has been proffered for the excessive procrastination of Plaintiff 's counsel." Id. at *5.

Nor is any excuse to be found in WCI's brief on appeal. Its argument may be reduced to the proposition that the delays were the result of a "paper war" between two parties equally at fault. Again, this overlooks that, as the plaintiff in this matter, WCI bore the responsibility for providing a damages calculation. It failed repeatedly to satisfy this requirement in anything close to a timely and thorough fashion. That the parties may have fought over ancillary matters -- a point which Rodale contests and is not entirely clear from the record -- does not support a conclusion by us that the District Court abused its discretion in finding a history of dilatoriness and bad faith by WCI.

E. Effectiveness of Alternative Sanctions

The District Court found that no other sanction besides exclusion (and consequently dismissal) would remedy the prejudice to Rodale, which had been deprived of a full opportunity to examine WCI's damages claim, as it was revealed only one week before trial was scheduled and without any supporting documentation. At this very late stage of a protracted litigation, the District Court found that it was neither appropriate nor economical to reopen discovery to allow Rodale the necessary time to investigate the damages claim. This was particularly so because WCI agreed in the October 2000 Stipulation that further noncompliance with discovery orders would be penalized by exclusion.

WCI's argument before us is twofold. First, it alleges that the District Court more appropriately should have excluded that portion of the damages calculation in the pretrial memorandum that was "over and above" the calculations provided in Reginald Ware's deposition. In other words, the District Court should have effected a "partial exclusion" of

only the new damages. There are at least a couple of problems with this argument. As noted above, the deposition testimony was (at best) tentative, imprecise, and unsupported. In addition, to the extent that Reginald Ware's deposition statements may be deciphered, his

figures address the same variables as found in the sparse calculations found in the pretrial memorandum -- i.e., advertising commissions, sale price of the magazine, and forecasted net profits. In other words, the pretrial memorandum does not proffer a "new" damages calculation, or at least it does not do so in a form cleanly separable from those referenced in the deposition testimony. Partial exclusion would appear to be untenable.

WCI's second argument is that the District Court alternatively should have levied money sanctions on plaintiff 's counsel, as permitted by Rule 37. It is true that Plaintiff 's counsel still has not provided any explanation for his conduct. But even if we opt for money sanctions rather than exclusion of evidence, this does not support concluding that the District Court abused its discretion in ordering dismissal. See Poulis, 747 F.2d at 870.

F. Meritoriousness of Claim or Defense

The District Court found that because WCI's contract claim previously had withstood Rodale's 12(b)(6) motion to dismiss, it was meritorious. Neither party offers any reason to disturb this conclusion.

* * * * *

The District Court concluded that the great weight of the Poulis factors support sanctions in the form of exclusion and dismissal. WCI's arguments on appeal are unpersuasive, and the continued absence of any explanation for counsel's tactics -- beyond simply "both sides were in a paper war" -- bolsters our belief that the District Court did not abuse its discretion in ruling to exclude WCI's damages evidence and dismiss its breach of contract claim.

III. DISMISSAL OF BREACH OF CONTRACT CLAIM ABSENT EXCLUDED EVIDENCE

WCI's other principal argument on appeal is that the District Court abused its discretion in dismissing the

11

contract claim because WCI still could prove damages without documentation. It seems to be making the rather novel assertion that certain damages still could be defined and recovered without any supporting evidence. To reiterate, the October 16, 2000 Stipulation stated that "[s]hould the Plaintiff fail to provide such full and complete responses, the parties agree that Plaintiff shall be prohibited from presenting any evidence in support of its claim at the time of trial of the within action." WCI argues that because this language refers to "claim" in the singular, the District Court should have allowed it to prove damages not covered by the Stipulation. This assertion is implausible. "Claim" plainly refers to the breach of contract claim, not any one claim of damages among many (e.g., a

claim for lost profits from the sale price of the magazine, a claim for lost monthly wages, etc.).

The District Court stated in a footnote that WCI's damages calculation "is insufficient to warrant a trial on the merits." 2002 WL 89604, at *6 n.5. Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a "reasonable certainty." ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 668 (3d Cir. 1998). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." Id. at 669 (quoting Spang & Co. v. United States Steel Corp., 545 A.2d 861, 866 (Pa. 1988)). The District Court concluded that

> Plaintiff failed to provide any supporting documentation or expert reports or analysis to support its damages calculations. Plaintiff produced no evidence or documentation concerning costs and expenses Plaintiff avoided by not having to perform its sales duties under the contract. Nor has Plaintiff provided the basis for the itemized advertised commissions. In fact, the damages calculations, as

12

> presented, evince little more than the opinion of Reginald Ware. "It is true . . . that the Pennsylvania law of contracts allows for some uncertainty in calculating damages . . . ." ATACS Corp., 155 F.3d at 670. However, "[w]hile mathematical certainty is not required, the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1257 (Pa. 1983); see also Scully v. U.S. WATS, Inc., 238 F.3d 497, 515 (3d Cir. 2001). After years of discovery, Plaintiff . . . has failed to present evidence upon which the factfinder could base a damages calculation to a reasonable certainty.

2002 WL 89604, at *6 n.5.

WCI makes no argument that the District Court's statements of law are incorrect. Instead, WCI contends that, without any supporting documentation, "the Appellant could have testified in his case in chief that he received monthly wages of Forty Thousand Dollars ($40,000.00) a month." Appellant's Br. at 27 (emphasis added). But WCI is the Appellant here; Ware has been dismissed as a party to this suit. And even if we were considering Ware's, and not WCI's, alleged damages, Ware's deposition testimony reveals that his damages calculation was an incomplete

(and hardly precise) estimate, not evidence upon which a factfinder could determine damages to a reasonable certainty.[4] The operative agreements contained a number of formulas to determine the compensation to which each party was entitled in the event the contract was terminated. Calculating these formulas required information on several factors relating to the financial health of the magazine. A factfinder's ability to award WCI damages resulting from a breach of contract required far more specific evidence than could be provided by the testimony of Reginald Ware as to the damages that he personally suffered.

In sum, WCI has provided no reason to conclude that the District Court abused its discretion in dismissing the breach of contract claim, for WCI failed to present evidence

_____

4. See supra note 3.

13

from which a factfinder could determine damages with reasonable certainty.

IV. CONCLUSION

For the reasons stated, we conclude that the District Court did not abuse its discretion in concluding that, after many months of acrimony, delays, and warnings (one of which was in a formal stipulation), WCI's last-minute submission of an incomplete and unsupported damages calculation merited exclusion of the evidence and dismissal of the breach of contract claim. In any event, WCI did not introduce evidence upon which a factfinder could calculate damages with reasonable certainty, thus supplying yet another reason that the District Court did not abuse its discretion in dismissing the breach of contract claim.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14