

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2008

# Briscoe v. Klaus

Precedential or Non-Precedential: Precedential

Docket No. 04-4162

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Briscoe v. Klaus" (2008). *2008 Decisions.* Paper 600.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/600

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4162

———

ORLAND BRISCOE,

Appellant

v.

KENNETH KLAUS; MARTIN L. DRAGOVICH;
MILLER; STENDER; SMITH; PRAVE;
PELTER; LEGGORE; MOORE; ALIARNELLO;
MARSHA HANCOCK; JOHN DOE

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-01253)
District Judge:  Honorable James M. Munley

———

Argued April 16, 2008

Before:  AMBRO, FISHER and MICHEL,[*] *Circuit Judges*.

———

[*]The Honorable Paul R. Michel, Chief Judge of the
United States Court of Appeals for the Federal Circuit, sitting by
designation.

(Filed: August 6, 2008)

Neelie S. Simmons (Argued)
Jones Day
500 Grant Street, 31st Floor
Pittsburgh, PA  15219
  *Attorney for Appellant Orland Briscoe*

David C. Dagle (Argued)
Daniel K. Natirboff
Capozzi & Associates
2933 North Front Street
Harrisburg, PA  17110
  *Attorneys for Appellee, Kenneth Klaus*

Raymond W. Dorian
Vincent R. Mazeski (Argued)
Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
P.O. Box 598
Camp Hill, PA  17011-0000
  *Attorneys for Appellees, Martin Dragovich,*
  *Miller, Raymond Stender, Prave,*
  *Clifford Pelter, Paul Leggore, Moore,*
  *Aliarnello, Marsha Hancock, and Smith*

———

OPINION OF THE COURT

———

2

FISHER, *Circuit Judge*.

Orland Briscoe appeals the District Court's decision to dismiss his case for failure to prosecute and comply with its orders pursuant to Federal Rule of Civil Procedure 41(b). Briscoe's complaint alleged that several prison officials at the State Correctional Institution at Camp Hill ("SCI-Camp Hill") and the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh") violated his constitutional rights under the Eighth and Fourteenth Amendments. After prison officials notified the District Court that Briscoe refused to be transported to the final pretrial conference, the District Court cancelled the pretrial conference, and two days later, it dismissed Briscoe's case. We hold that the District Court abused its discretion in dismissing Briscoe's case sua sponte without providing him with a full and fair opportunity to be heard regarding the reason he failed to attend the pretrial conference. For the following reasons, we will vacate the District Court's order and remand the case to the District Court for proceedings consistent with this opinion.

I.

On July 6, 2001, Orland Briscoe filed a complaint in the District Court for the Middle District of Pennsylvania. Briscoe, a Pennsylvania state prisoner, alleged that two incidents occurred in which prison officials at SCI-Camp Hill and SCI-Pittsburgh violated his constitutional rights.

The first instance occurred on December 17, 1999 when several Corrections Officers ("COs") arrived to return Briscoe

3

to his cell after he had been released from the infirmary at SCI-Camp Hill. He alleged that Sergeant Paul Leggore, CO Moore, CO Nicholas Prave, CO James Zihmer, Lieutenant Miller, and CO Anthony Alianiello entered his infirmary cell, and proceeded to strike him with a riot shield, beat him, kick him, and carry him to the strip search area. He was then strip searched in the presence of Leggore, Prave, Alianiello, Zihmer, CO Kenneth Klaus, CO Adam Huber, and CO Randy McCauslin.

The second instance occurred on April 12, 2000, when several COs transferred Briscoe from SCI-Camp Hill to SCI-Pittsburgh. The COs took Briscoe to the strip search area, and the following officers conducted the search: Leggore, McCauslin, Prave, Klaus, Smith, CO Clifford Pelter, CO Edward Hatcher, and CO Raymond Stender. After Briscoe failed to follow the COs' instructions during the strip search, Smith ordered the officers to take him down to the floor. While he was on the floor, Klaus kneed him in the face. The COs then took Briscoe to the van to transfer him. During the transfer, Briscoe claims that Stender elbowed him in the mouth, damaging one of his teeth. He also claims that Smith used an electronic immobilizing device on him.[1] Upon arriving at SCI-Pittsburgh, the nurse, Marsha Hancock, examined and treated Briscoe.

Based on these facts, Briscoe instituted this litigation against the prison officials pursuant to 42 U.S.C. § 1983,

---

[1]Based on the incidents on April 12, 2000, the Department of Corrections suspended Smith and Klaus.

4

alleging that the prison officials violated his Eighth and Fourteenth Amendment rights in the following ways: (1) Miller, Leggore, Moore, Alianiello, Prave, and Zihmer used excessive force on him in the infirmary cell on December 17, 1999; (2) Miller, Leggore, Moore, Alianiello, Prave, and Zihmer used excessive force on him during the strip search on December 17, 1999; (3) Miller, Stender, Leggore, McCauslin, Pelter, Prave, Smith, and Klaus used excessive force on him during the strip search on April 12, 2000; (4) Stender and Smith used excessive force on him while transporting him to SCI-Pittsburgh on April 12, 2000; and (5) Nurse Hancock refused to provide him with the medical treatment he requested.

In July 2002, Briscoe did not attend his scheduled deposition. On September 4, 2002, defendant Klaus filed a motion to dismiss Briscoe's case for failure to prosecute. On September 30, 2002, Briscoe submitted a brief in opposition to the motion. In it, he explained that, prior to the hearing, prison officials had confiscated all of his legal documents and his clothing. He attached a declaration from an inmate who supported his assertion of these facts. He further stated that he had contacted Klaus' counsel, requesting that the deposition be rescheduled when he had access to all of these materials. On March 19, 2003, the District Court denied Klaus' motion to dismiss.

After completion of discovery, the parties filed cross-motions for summary judgment. On March 31, 2004, the District Court denied Briscoe's motion for summary judgment, but granted the defendants' motion for summary judgment in part, finding that several of the defendants had not violated

Briscoe's Eighth and Fourteenth Amendment rights. Specifically, the District Court granted summary judgment in favor of the following defendants: (1) Miller, Leggore, Moore, Alianiello, Prave, and Zihmer, finding that they had not used excessive force during the strip search on December 17, 1999; (2) Miller, Stender, Leggore, McCauslin, Pelter, and Prave, finding that they had not used excessive force during the strip search on April 12, 2000; and (3) Nurse Hancock, finding that she had not acted with deliberate indifference in treating Briscoe. Therefore, Briscoe's remaining claims that survived summary judgment were: (1) Miller, Leggore, Moore, Alianiello, Prave, and Zihmer used excessive force on him in the infirmary cell on December 17, 1999; (2) Smith and Klaus used excessive force on him during the strip search on April 12, 2000; and (3) Stender and Smith used excessive force on him while transporting him to SCI-Pittsburgh on April 12, 2000.

On August 5, 2004, the District Court filed a Scheduling Order. It scheduled the final pretrial conference for September 9, 2004, and it set the trial to begin on September 27, 2004. Briscoe filed a motion, requesting a sixty-day extension to file his jury instructions and subpoena his witnesses. The District Court did not rule on this motion.

On September 8, 2004, the District Court entered an order, stating that it had been "notifi[ed] from Plaintiff's custodian, the State Correctional Institution at Fayette, Labelle, Pennsylvania, that the Plaintiff is refusing to be transported for purposes of attending the Final Pretrial Conference scheduled in this matter for Thursday[,] September, 9, 2004." As a result of this notification, it entered the following order:

6

1. The Plaintiff's refusal to appear at the Final Pretrial Conference in this matter could be construed as a failure to prosecute the action, as well as a failure to comply with the rules of court and will result in an involuntary dismissal of the action, on the merits, pursuant to Fed. R. Civ. P. 41(b);

2. The Clerk of Court is hereby directed to serve this Order on the Plaintiff's custodian *via* facsimile;

3. Plaintiff's custodian is ordered to serve this Order upon the Plaintiff forthwith;

4. Plaintiff's custodian is further ordered to notify this Court of the Plaintiff's status by 3:00 p.m. on this date.

Pursuant to this order, the prison officials notified the District Court that Briscoe continued to refuse to be transported. Thus, the District Court entered a second order, cancelling the conference.

On September 10, 2004, the District Court dismissed Briscoe's case for failure to prosecute and comply with its orders pursuant to Federal Rule of Civil Procedure 41(b). In its order, the court considered the six factors applicable to dismissing a case pursuant to Rule 41(b) as set forth in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). It noted that Briscoe's claims "were based in some

merit" because they "had successfully cleared the summary judgment hurdle and were in posture to proceed to trial." However, it found that the remaining factors were not in favor of Briscoe. It found that Briscoe was personally responsible for his refusal to attend the conference, his refusal was willful because he had ignored the court's specific warning to him, and his failure to attend the conference prejudiced the defendants because the defendants could not "effectively prepare for trial so as to bring the litigation to a resolution." Additionally, it found that, although Briscoe did not have a history of dilatoriness, his refusal to attend the conference was a dilatory tactic in light of his request for an extension of time to comply with the court's order regarding pretrial documentation. Finally, it found that alternative sanctions were unavailable in the present case. Based on its evaluation of these factors, the District Court dismissed Briscoe's case. Its order stated:

> 1. The Plaintiff's action is DISMISSED ON THE MERITS for failure to prosecute and comply with orders of [the] Court pursuant to Fed. R. Civ. P. 41(b);
>
> 2. The Clerk of Court is directed to CLOSE this case;
>
> 3. Any appeal from this Order will be deemed frivolous, lacking in probable cause and not in good faith.

8

On September 29, 2004, Briscoe filed a timely notice of appeal to this Court.[2]

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1343(a)(3), and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a District Court's decision to dismiss a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b) for an abuse of discretion. *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). "While we defer to the District Court's discretion, dismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." *Id.*

## III.

Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to

---

[2]Additionally, on December 1, 2004, Briscoe wrote a letter to Chief Judge Vanaskie of the Middle District of Pennsylvania. In this letter, Briscoe alleged that his failure to attend the pretrial conference was due to the prison officials' refusal to transport him. He alleged that the District Court had erred in dismissing his case without providing him with an opportunity to respond to the prison officials' statements regarding his refusal to be transported. He requested reinstatement of his case.

comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").  To determine if the District Court abused its discretion in dismissing the case, "we will be guided by the manner in which the trial court balanced the following factors, . . . and whether the record supports its findings:  (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense."  *Poulis*, 747 F.2d at 868 (emphasis in original).

We will conduct an analysis of the *Poulis* factors below, but first, we note that "dismissals with prejudice . . . are drastic sanctions."  *Id.* at 867-68.  As a result, it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis. *Cf. Emerson*, 296 F.3d at 191 (affirming the District Court's order dismissing the plaintiff's case, and in doing so, noting that the District Court gave the plaintiff "numerous extensions of time[, . . . and] the opportunity to substantiate that he was unable to proceed for medical reasons"). While a District Court may dismiss a case sua sponte, *see Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 341 (3d Cir. 1982), it should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision.  With this caution in mind, we hold that the District Court should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply

10

with its orders prior to dismissing a case sua sponte. *See Emerson*, 296 F.3d at 191. Our review of the District Court's application of the *Poulis* factors in this case demonstrates the inherent problem with dismissing a case without providing the plaintiff with an opportunity to be heard.

## A.    Evaluation of the Six *Poulis* Factors

### 1.    The extent of the party's personal responsibility.

The District Court found that Briscoe was personally responsible for his refusal to attend the conference, particularly because he is proceeding pro se. Although the District Court correctly described the law, the record was insufficient for it to conclude that Briscoe was personally responsible without first providing him with an opportunity to explain why he failed to attend the conference.

As a legal proposition, the District Court is correct in stating that a pro se plaintiff is responsible for his failure to attend a pretrial conference or otherwise comply with a court's orders. *Compare Emerson*, 296 F.3d at 190, *with Poulis*, 747 F.2d at 868. In *Emerson*, we found that the District Court did not abuse its discretion in dismissing the plaintiff's case, and in doing so, we implicitly affirmed the District Court's finding that a pro se plaintiff is personally responsible for complying with the court's orders. 296 F.3d at 190-91. Moreover, it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel

11

relies, at least in part, on his or her attorney. *See Poulis*, 747 F.2d at 868 (stating that "a client cannot always avoid the consequences of the acts or omissions of its counsel," but considering "the [plaintiffs'] lack of responsibility for their counsel's dilatory conduct" in conducting the balancing of the six factors). Therefore, the District Court was correct in stating that a pro se plaintiff is responsible for his failure to attend a pretrial conference or otherwise comply with a court's orders.

However, the record in the present case is insufficient to support the District Court's finding that Briscoe "refus[ed] to attend the pretrial conference" and thus "fail[ed] to comply with orders of th[e] court." The District Court made this finding based upon its communications with prison officials, and thus, it assumed that the prison officials' correspondence was accurate and truthful. It never, however, sought Briscoe's explanation regarding why he failed to attend the hearing and comply with the order. Briscoe now argues to this Court that the prison officials' account of the incident was inaccurate and dishonest, and the reason he could not attend the conference was because the prison officials refused to transport him. As discussed above, the District Court should have provided Briscoe with the opportunity to explain his failure to attend the conference, thus gathering a full understanding of the facts. Because it did not, the record was insufficient for the District Court to find that Briscoe was personally responsible for failing to attend the conference.

12

## 2.     The prejudice to the adversary.

The District Court found that Briscoe's failure to attend the conference prejudiced the defendants because the defendants could not "effectively prepare for trial so as to bring the litigation to a resolution."  Again, while the District Court correctly described the law, the record was insufficient for it to conclude that Briscoe's conduct prejudiced the defendants without providing Briscoe with an opportunity to explain why he failed to attend the conference.

We have stated that "[e]vidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  *Id.* at 874 (internal quotation marks and citations omitted).  In the present case, the defendants were not prejudiced based on this general description of prejudice, i.e., Briscoe's failure to attend the conference did not cause a loss of evidence, a dimming of the witnesses' memories, or excessive costs. *See id.*

However, prejudice is not limited to "irremediable" or "irreparable" harm.  *Id.*; *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988).  It also includes "the burden imposed by impeding a

13

party's ability to prepare effectively a full and complete trial strategy." *Ware*, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. *See*, *e.g.*, *Poulis*, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); *Ware*, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

The District Court was correct in extending this type of deprivation of necessary information to final pretrial conferences. At the final pretrial conference, the District Court "formulate[s] a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e). By this time, each party has fully disclosed the evidence it plans to present at trial. If the plaintiff has not disclosed all of its evidence prior to trial or fails to attend the conference, the District Court would not be able to properly formulate a plan, prejudicing the defendants in their trial preparations.

In the present case, assuming Briscoe's failure to attend the conference was of his own accord, the District Court was unable to formulate the trial plan, prejudicing the defendants to

14

some extent.[3]   However, the District Court's finding is dependent on the factual premise that Briscoe did not attend the hearing of his own accord.  If it had conducted a hearing and found Briscoe's assertion to be true, any prejudice to these defendants would be negated because, under those facts, the defendants themselves caused Briscoe's no-show.  Therefore, the District Court could not have reached its conclusion as to prejudice without providing Briscoe with an opportunity to be heard.

### 3.      A history of dilatoriness.

The District Court found that Briscoe did not have a history of dilatoriness, but that his refusal to attend the conference was a dilatory tactic in light of his request for an extension of time to comply with the court's order regarding pretrial documentation.  From this "refusal," the District Court found that it "[wa]s faced with a complete lack of cooperation" on Briscoe's part.  We agree with the District Court that Briscoe did not have a history of dilatoriness.  Regarding whether this instance was a dilatory tactic, we find that the evidence in the record is not sufficient to support that finding, and even if it was, the District Court should not have utilized a single instance of dilatory behavior in balancing the *Poulis* factors.

---

[3]While the defendants would be prejudiced, we note that there are varying degrees of prejudice, and courts should consider the degree of prejudice that the defendant suffered accordingly when conducting the balancing of the *Poulis* factors.

15

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874; *see also Ware*, 322 F.3d at 224 (finding that a history of dilatory conduct existed because the plaintiffs "failed repeatedly" to provide a damages calculation for the defendant); *Emerson*, 296 F.3d at 191 (finding that a history of dilatory conduct existed because the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines). For example, in *Poulis*, the plaintiffs never sought discovery, did not answer discovery requests, and did not file a pretrial statement by the court's established deadline, and the District Court dismissed the plaintiffs' case. 747 F.2d at 865. We remanded to the District Court for it to consider whether alternative sanctions were available. *Id.* at 866. It ordered the parties to file briefs, the plaintiffs' brief was four days late, and it once again dismissed the case. *Id.* at 866-67. Based on this evidence, we held that a "consistent delay" was present, and thus, it met the requirement for a "history of dilatoriness." *Id.* at 868.

However, conduct that occurs one or two times is insufficient to demonstrate a "history of dilatoriness." *See Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984) (finding that, although the plaintiff's pretrial documents were "filed inexcusably late," it was not the same history of dilatoriness present in *Poulis*, 747 F.2d at 868); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 343 (3d Cir. 1982) (reinstating plaintiff's case where the plaintiff acted dilatory on one occasion but no evidence existed that the plaintiff's

16

behavior was willful). Furthermore, we must evaluate "a party's problematic acts . . . in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875 (citing *Dyotherm Corp. v. Turbo Machine Co.*, 392 F.2d 146 (3d Cir. 1968)). In *Dyotherm*, plaintiff's counsel did not inform the court that he was not going to secure separate patent counsel, in which case the trial would have begun three months earlier. 392 F.2d at 147. He then arrived late to the first day of trial, informed the judge that his principal witness could not appear for another week and another witness was still unknown to him, and arrived late the subsequent day still unable to present a witness. *Id.* As a result, the District Court dismissed the plaintiff's case. *Id.* However, we reversed, finding that the plaintiff had not engaged in any dilatory tactics during the first two-and-a-half years that the case had been pending, and thus, "the district court should not have applied the harsh penalty of dismissal." *Id.* at 149.

As noted, we agree with the District Court's conclusion that Briscoe's conduct did not demonstrate a "history of dilatoriness." Even assuming that Briscoe "refused" to attend the conference, his refusal was only one instance of dilatory conduct.[4] Thus, unlike in *Poulis*, *Emerson*, and *Ware*, Briscoe

[4]The defendants argue that Briscoe was also dilatory in failing to attend his deposition. However, the District Court previously found that he was not fully responsible for his failure to attend the deposition, and his actions were not willful or in bad faith. Considering this prior finding, as well as Briscoe's allegations that he chose not to attend the deposition because all of his personal belongings, including his clothing, had been removed from his cell, we cannot find that the District Court

17

did not engage in any prior instances of dilatory conduct that could constitute a continuous stream of dilatory conduct. Moreover, to the extent that the District Court relied on Briscoe's failure to attend the conference as a "dilatory tactic" in its balancing of the *Poulis* factors, it should have considered this conduct in light of the fact that Briscoe had consistently met deadlines for past motions and had prosecuted his case for over three years. *See Dyotherm*, 392 F.2d at 149. Thus, even if the record supported the District Court's finding that Briscoe was dilatory, it should not have weighed this one instance of dilatory conduct against Briscoe in its balancing of the *Poulis* factors.

Finally, we do not think this record so clearly supports the District Court's conclusion that Briscoe was dilatory in this instance. Its finding is again dependent on the premise that Briscoe refused to attend the pretrial conference. As discussed above, the District Court should have provided Briscoe with the opportunity to explain his failure to attend the conference. Because it did not, the record was insufficient for the District Court to find that Briscoe refused to attend the conference as a dilatory tactic.

---

abused its discretion in choosing not to consider this conduct in determining whether Briscoe had a history of dilatory conduct. Thus, the defendants' argument that Briscoe had engaged in more than one instance of dilatory conduct fails.

18

### 4. Whether the conduct of the party or the attorney was willful or in bad faith.

The District Court found that Briscoe was "willful" because he did not attend the conference despite the court's express warning that it could dismiss his claims. Although the District Court correctly described the law, the record does not support its finding that Briscoe was willful because it did not provide Briscoe with an opportunity to explain the reason he failed to attend the hearing.

Under this factor, the District Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." *Adams*, 29 F.3d at 875 (internal quotation marks and citation omitted). Generally, "[w]illfulness involves intentional or self-serving behavior." *Id.* If the conduct is merely negligent or inadvertent, we will not call the conduct "contumacious." *See Poulis*, 747 F.2d at 868-69 (finding that plaintiff's counsel's behavior was not contumacious because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his and his wife's poor health); *see also Emerson*, 296 F.3d at 191 (finding bad faith because the conduct went beyond mere negligence). Therefore, the District Court was correct in finding that, where a plaintiff refuses to attend a final pretrial conference in an attempt to delay the trial, his refusal would be "willful."

However, the record is insufficient to support the District Court's finding that Briscoe refused to attend the pretrial conference. As discussed in the three preceding factors, the

19

District Court should have provided Briscoe with a full and fair opportunity to present the reasons he did not attend the conference prior to finding that he "refused" to attend.[5] Because it did not, the record is insufficient to support its finding that Briscoe willfully refused to attend the conference with the purpose to delay the proceedings.

> **5. The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions.**

The District Court found that alternative sanctions were not available in this case because "[w]hen a Plaintiff fails to prosecute his action, outside of dismissal of the action, the Court cannot envision a sanction that would be appropriate." It further found that monetary sanctions, including fines, costs, or payment of attorneys' fees were unavailable. We agree with the District Court's conclusion.

A District Court must consider the availability of sanctions alternative to dismissal. *Poulis*, 747 F.2d at 869. Where an attorney has caused the delay and noncompliance in the proceedings, we have noted that "[u]nder the Federal Rules of Civil Procedure and the 1983 amendments, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Id.*

---

[5]We note that, even assuming that Briscoe did not attend the pretrial conference on his own accord, it does not necessarily follow that his purpose was to delay the proceedings.

20

However, where a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, "would not be an effective alternative." *Emerson*, 296 F.3d at 191.

In the present case, Briscoe was proceeding pro se and in forma pauperis. Because he was proceeding pro se, he had no attorney upon whom the District Court could impose the expenses for failing to comply with the court's orders as in *Poulis*. Moreover, both the fact that he was proceeding in forma pauperis and that he was currently incarcerated indicated that he would not be able to pay monetary sanctions. *See Emerson*, 296 F.3d at 191. Therefore, the District Court did not abuse its discretion in finding that there were no alternative sanctions available to it, and the record supported its finding.[6]

### 6. The meritoriousness of the claim or defense.

The District Court found that Briscoe's claims "were based in some merit" because they "had successfully cleared the summary judgment hurdle and were in posture to proceed to trial." We agree with the District Court's conclusion.

---

[6]Although Briscoe argues that the District Court did not consider the availability of alternative sanctions as thoroughly as it should have, he does not point to any alternative sanctions that were available to the District Court in this case.

21

Generally, in determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Poulis*, 747 F.2d at 869-70. Thus, we deem "[a] claim, or defense . . . meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Id.*

In the present case, several of Briscoe's claims survived the summary judgment stage of litigation. Therefore, viewing the facts in the light most favorable to Briscoe, his claims presented genuine issues of material fact, necessitating a trial on the issues. *See* Fed. R. Civ. P. 56(c); *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006). A fortiori, these claims surpassed the Rule 12(b)(6) motion to dismiss standard, and under the *Poulis* analysis, his claims are deemed to have merit.

## B. Balancing of the *Poulis* Factors

In balancing the *Poulis* factors, we do not have a "magic formula" or "mechanical calculation" to determine whether a District Court abused its discretion in dismissing a plaintiff's case. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). While "no single *Poulis* factor is dispositive," *Ware*, 322 F.3d at 222, we have also made it clear that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Mindek*, 964 F.2d at 1373.

In the present case, the only factor that is clearly in favor of the defendants is that the District Court did not have any alternative sanctions available to it. The factors that clearly

22

favor Briscoe are that his remaining claims have some merit, and he does not have a history of dilatoriness. However, these factors are not dispositive of the inquiry as to whether the District Court abused its discretion in dismissing the case because there is no "magic formula," and we must look at the District Court's balancing as a whole, including whether the record supported its findings. *See Poulis*, 747 F.2d at 868.

Turning to the remaining three factors, the present record does not support the District Court's findings as to the extent of Briscoe's personal responsibility, the prejudice to the defendants, or whether Briscoe acted willfully or in bad faith. *See Poulis*, 747 F.2d at 868. Although we do not require all of the factors to be satisfied to find that the District Court did not abuse its discretion, *Mindek*, 964 F.2d at 1373, the fact that three of the six factors have an inadequate foundation (and two of the six clearly favor Briscoe) demonstrates that the District Court should have found additional reasons prior to dismissing Briscoe's case. Its failure to do so may have impacted its conclusion to dismiss the case, and thus, it was an abuse of discretion.

Therefore, we hold that where, as here, the District Court does not have the facts necessary to conduct a full analysis of the *Poulis* factors, it is not appropriate for the District Court to dismiss a plaintiff's case sua sponte. Instead, the District Court must provide the plaintiff with a full and fair opportunity to be heard regarding his failure to comply with the court's orders. Only after providing that opportunity should the District Court conduct an analysis of the *Poulis* factors to determine whether it should dismiss the plaintiff's case. As a result, the District

23

Court abused its discretion in dismissing this case for failure to prosecute under Rule 41(b).

## IV.

For the foregoing reasons, we will vacate the District Court's order and remand for proceedings consistent with this opinion.

24