NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3285
_____

JAMES BROWN, individually and on behalf of all others
similarly situated,
Appellant

v.

AGWAY ENERGY SERVICES, LLC
_____

On Appeal from the District Court
for the Western District of Pennsylvania
No. 2-18-cv-00321
District Judge: Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
On April 15, 2020

Before: CHAGARES, SCIRICA, and ROTH, Circuit Judges

(Filed: August 25, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Appellant James Brown seeks review of the trial court's order dismissing his putative class-action claims asserting that Appellee Agway Energy Services, LLC ("Agway") violated contractual agreements with its customers. We will affirm.[1]

## I.

Brown's claim arises from Agway's system for pricing its services, so resolving this case requires a basic understanding of Agway's business. Traditionally, electricity and gas companies held vertical monopolies in which the same company would produce and deliver energy to customers. But about twenty years ago, Pennsylvania took regulatory action intended to promote competition in the provision of energy services. One of these steps allows customers to purchase energy from an electric generation supplier ("EGS"), like Agway, which purchases electricity from a traditional electric utility company and then resells it to customers. This allows customers seeking electricity to choose between a traditional electricity utility company and an EGS. Aside from providing electricity, an EGS can also offer other services. For example, Agway offers a service called EnergyGuard, whereby a customer receives a certain amount of repair services for energy-related appliances, like air conditioners, each year.

---

[1] Because the parties are minimally diverse and more than five million dollars are at issue, the trial court had jurisdiction over this putative class action under 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291 because the trial court issued a final order dismissing Brown's case.

Brown contracted with Agway for the provision of electricity as well as the EnergyGuard service. To consummate the contractual relationship, Agway sent Brown a customer contract and a one-page document summarizing the contract. The contract's summary discloses many of its key terms. In the section titled "Price Structure," the chart discloses that the price is variable, is set "at Agway's discretion," and reflects the cost of electricity acquired by Agway, together with related transmission and distribution charges and "other market-related factors, plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins." App. 24-25. That same section contains the bolded text: "**There is no limit on how much the variable rate can change from one billing cycle to the next.**" App. 61. Section 3 of the contract, titled "Price," reiterates that the variable price will be calculated "by Agway, at Agway's discretion, on a customer specific basis each billing cycle" and that the rate

> will include all of the costs incurred in providing service to customer, including the following: electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), transmission and distribution charges, . . . other market-related charges, plus all applicable taxes including the gross receipts tax, fees, charges or other assessments and Agway's costs, expenses and margins.

App. 62.

On March 13, 2018, Brown filed a putative class action on behalf of himself and all of Agway's Pennsylvania customers. Relying on data showing that Agway charged prices for electricity twenty to forty-six percent higher than traditional electricity utility provider, Brown alleged that Agway had breached its contract by charging variable rates for electricity that were not based on market-related factors.

3

The trial court granted Agway's motion to dismiss for failure to state a claim, concluding that the plain terms of the contract allowed Agway to set prices as it did. Concluding that amendment would be futile, the trial court dismissed the case with prejudice. The trial court denied two subsequent motions for reconsideration by Brown, who filed a timely appeal with this Court.

**II.**

Brown contends that the trial court improperly dismissed his complaint for failure to state a claim for breach of contract, and that it should have allowed him to replead. Because we conclude that the contract's plain language forecloses Brown's claim, and that repleading is futile, we will affirm the order of the trial court.[2]

In this diversity case, all agree that a valid contract exists and that Pennsylvania contract law applies. Under Pennsylvania law, a breach of contract claim has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973) (quoting *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965)) (internal quotations omitted).

---

[2] We review a grant of a motion to dismiss for failure to state a claim de novo. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

Brown argues that Agway breached its contract by setting prices not sufficiently tethered to its cost of acquiring the electricity it resold. He points to data showing that Agway charged prices substantially higher than what he could have paid to a traditional electricity provider. The problem with this theory is a simple one: the plain language of Brown's contract gives Agway flexibility to set prices based on a variety of factors, not just the cost of acquiring electricity.

The contract in this case is replete with language giving Agway discretion to set prices based on factors other than the rates charged by traditional electric utility companies. The contract states that the price charged to customers is set each month "at Agway's discretion" and "reflect[s] multiple enumerated factors." App. 18-19. In more detail, the contract states Agway will set a price based on:

> all of the costs incurred in providing service to customer, including the following: electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), transmission and distribution charges, . . . other market-related charges, plus all applicable taxes including the gross receipts tax, fees, charges or other assessments and Agway's costs, expenses and margins.

App. 62.

Several words in this contractual provision make clear that Agway can base its prices on factors other than its cost of acquiring electricity, including the open-ended phrase "market-related charges." Further, the provision makes clear that Agway can consider its own "costs, expenses, and margins" in setting prices. One obvious cost is Agway's EnergyGuard service. The fact that Agway provides that service to Brown

5

undermines his comparison of Agway's prices to that of a traditional electric utility supplier, which may not provide such a service.

Finally, we agree that the trial court did not abuse its discretion in denying Brown an opportunity to replead. When seeking leave to replead before the trial court, Brown did not point to any facts he could replead that would repair the flaws in his case, and the "failure to explain how [he] could have amended [his] complaint to cure its deficiencies is a critical omission." *United States v. ex rel. Wilkins v. U. Health Grp., Inc.*, 659 F.3d 295, 315 (3d Cir. 2011). Therefore, we conclude the trial court did not abuse its discretion in denying permission to replead.[3]

## III.

For the foregoing reasons, we will affirm the judgment of the trial court.

---

[3] We also conclude that the trial court did not abuse its discretion in denying Brown's requests to amend his complaint after final judgment had been issued under Federal Rules of Civil Procedure 59(e) and 60(b).