**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 12-2061, 12-2063, 12-2064, 12-2065, 12-2066, 12-2067,
12-2068, 12-2069, 12-2070, 12-2071, 12-2072, 12-3082

_____

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION
(NO. VI)

BARRY WRIGHT,
Appellant in No. 12-2061

JOSEPH J. REPISCHAK,
Appellant in No. 12-2063

NANCY BRIX, Individually
and as Special Administrator of the
Estate of Gerald Brix, deceased,
Appellant in No. 12-2064

ANTHONY J. ARENDT,
Appellant in No. 12-2065

LUELLEN DELLENBACH,
individually and as Special
Administrator  for the Estate of
Warren C. Hansen, deceased,
Appellant in No. 12-2066

RONALD J. MICHELS,
Appellant in No. 12-2067

VIRGINIA M. MORRIS,
Individually and as Special
Administrator of the Estate of
Roy Morris, deceased,
Appellant in No. 12-2068

TRACY BURZYNSKI,
Individually and as Special
Administrator of the Estate of
Milo Burzynski, deceased,
Appellant in No. 12-2069

RUSSELL V. OSTRAND,
Appellant in No. 12-2070

MICHAEL R. DUFFEY,
Individually and as Special
Administrator of the Estate of
Paul V. Duffey, deceased
Appellant in No. 12-2071

ROGER ZERBEL,
Appellant in No. 12-2072

KATHLEEN STAFFORD,
Individually and as Special
Administrator of the Estate of
James J. Wilhelm, Deceased,
Appellant in No. 12-3082

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Nos. 2-01-md-00875; 2-08-cv-9034;
2-09-cv-61032; 2-09-cv-61335; 2-09-cv-65679;
2-09-cv-91900; 2-10-cv-62038; 2-10-cv-62047;
2-10-cv-62062; 2-11-cv-62393; 2-11-cv-63493;
2-11-cv-63495; 2-11-cv-63506; 2-11-cv-63497)
District Judges: Honorable Sean J. McLaughlin and
Honorable Eduardo C. Robreno

Argued April 3, 2013

(Filed: May 31, 2013)

Before:  SCIRICA, RENDELL and VANASKIE

Brian A. Schroeder, Esq.
Michael P. Cascino, Esq.
Robert  G. McCoy, Esq.  *Argued*
Cascino Vaughn Law Offices
220 South Ashland Avenue
Chicago, IL 60607

Counsel for Appellants

Ashley E. Calhoun, Esq.
Daniel J. Mulholland, Esq. ***Argued***
John M. Seebohm, Esq.
David M. Setter, Esq.
Forman, Perry, Watkins, Krutz & Tarsy
1775 Sherman Street
Suite 1900
Denver, CO 80203

        Counsel for Appellees Atlantic Richfield Company; CBS Corporation, a Delaware Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation; General Electric Company; Georgia-Pacific LLC; Ingersoll Rand Company; Owens-Illinois, Inc. d/b/a O-I; Trane U.S. Inc., f/k/a American Standard, Inc.; and Union Carbide Corporation

Eric D. Carlson, Esq.
Samuel C. Hall, Jr., Esq.
Crivello Carlson, S.C.
710 North Plankinton Avenue
Suite 500
Milwaukee, WI 53202

       Counsel for Appellees Albany International Corporation; Mount Vernon Mills Incorporated; Albany Felt Company, Durox Company; Koppers Incorporated; Rogers Corporation; Sprinkmann Sons Corporation; West Bend Company; Wisconsin Electric Power Company; Brake Supply Company Incorporated; and Graybar Electric Company

Syed D. Ali, Esq.
Michael J. Zukowski, Esq.
K&L Gates, LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222

       Counsel for Appellees Crane Company; Schneider Engineering Services, as successor to Square D Company; and Schneider Electric SA

5

Gregory M. McNamee, Esq,
Emily C. Zapotocny, Esq.
Segal, McCambridge, Singer & Mahoney
233 South Wacker Drive
Sears Tower Suite 5500
Chicago, IL 60606

Counsel for Appellees Durametallic Corporation; DAP Incorporated; Zurn Industries, LLC; and Gardner Denver, Incorporated

Kathryn R. Downey, Esq.
Thomas A. Gilligan, Jr. Esq.
C. Todd Koebele, Esq.
Murnane Brandt
30 East 7th Street
Suite 3200
St. Paul, MN 55101

Counsel for Appellees Bechtel Corporation; Bechtel Construction Company; and Cornell Pump Company

Craig L. Unrath, Esq.
Heyl Royster Voelker & Allen
124 Southwest Adams Street
Suite 600, Chase Building
Peoria, IL 61602

> Counsel for Appellees Air & Liquid Systems Corporation as successor by merger to Buffalo Pumps; Parker Hannifin Corporation; and Union Carbide Corporation

Brady L. Green, Esq.
Douglas J. Gush, Esq.
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

> Counsel for Appellee Elliott Company individually and as successor to Elliot Turbomachniery Company

Nancy G. Lischer, Esq.
Hinshaw & Culbertson
222 North LaSalle Street
Suite 300
Chicago, IL 60601

> Counsel for Airgas Merchant Gases LLC as successor in interest to AGA Gas, Inc.

Edward F. Houff, Esq.
Clare M. Maisano, Esq.
Evert, Weathersby & Houff
120 East Baltimore Street
Suntrust Bank Building, Suite 1300
Baltimore, MD 21202

> Counsel for Appellees LINDE LLC, sued as Linde Inc., f/k/a The BOC Group and/or Airco; The Lincoln Electric Company; and Hobart Brothers Company

Jerome D. Feriancek, Esq.
Thibodeau, Johnson & Feriancek, PLLP
302 West Superior Street
Suite 800
Duluth, MN 55802

> Counsel for Appellee Honeywell lnternational, lnc. and Pneumo Abex, LLC, successor in interest to Abex Corporation

Steven L. Parrott, Esq.
Dehay & Elliston, LLP
36 South Charles Street
Baltimore, MD 21201

> Counsel for Pneumo Abex, LLC

Thomas M. Stieber, Esq.
Foley & Mansfield
250 Marquette Avenue
Suite 1200
Minneapolis, MN 55401

> Counsel for Appellee Plastics Engineering Company

John A. Fonstad, Esq.
Carter G. Phillips, Esq.
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005

> Counsel for Appellee General Electric Company

David L. Kelleher, Esq.
Jackson & Campbell, P.C.
1120 20th Street, NW
South Tower – Suite 3000
Washington, DC 20036

> Counsel for Appellee Metso Paper, USA Inc.

9

O P I N I O N

**RENDELL,** <u>Circuit Judge</u>:

This appeal comes to us from Multidistrict Litigation case number 875 ("MDL 875"), otherwise known as the "Asbestos MDL," involving asbestos cases from around the country, pending before Judge Robreno in the United States District Court for the Eastern District of Pennsylvania. The District Court, overseeing several thousand asbestos cases, dismissed the claims of twelve Plaintiffs[1] pursuant to Rule 41(b) of the Federal Rules of Civil Procedure based on non-compliance with the District Court's Administrative Order No. 12 ("AO 12"). Specifically, Judge Robreno determined that the Plaintiffs' submissions were fatally flawed in that they failed to include specific histories of Plaintiffs' exposure to asbestos. Plaintiffs contend on appeal, as they did in the District Court, that AO 12 did not impose this requirement, and urge, alternatively, that even if it did, under a proper balancing of the factors we outlined in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d Cir. 1984), dismissal with prejudice was not warranted. For the reasons

---

[1]The twelve Plaintiffs involved in the present appeal are represented by Cascino Vaughan Law Offices ("CVLO"), who serve as counsel in approximately two thousand cases still pending in MDL 875. App. at 19-20. The CVLO cases represent the second largest land-based group of cases to remain in the litigation. *Id.*

discussed below, we will affirm the District Court's dismissal of the twelve cases at issue.

## I. Background

The present cases – as well as several thousand others – were transferred to the Eastern District of Pennsylvania in 1991 as a result of a centralization of all asbestos-related cases, as ordered by the Judicial Panel on Multidistrict Litigation. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). The Panel found that centralization would "best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.* at 417. MDL 875 once included more than 150,000 plaintiffs and more than eight million claims. App. at 20. By the time Judge Robreno inherited the MDL in 2009, thousands of cases had been settled or otherwise resolved. Judge Robreno has been diligently overseeing the progress and resolution of the remaining cases since then.

To streamline the litigation of the thousands of cases in MDL 875, the original AO 12 was issued in 2007 by then-presiding District Judge Giles. *Id.* at 5-8. The purpose of AO 12, specifically, was to (1) assist the District Court in managing the large number of cases and the complex issues involved in the litigation; (2) to allow meritorious cases to move to trial or settlement properly; and (3) to avoid unnecessary burdens on defendants by requiring plaintiffs to provide certain medical and exposure information at the

11

outset of the case. *Id.* at 41-42, n.2.[2] Judge Robreno, with the assistance of dedicated magistrate judges, has continued to oversee discovery and pretrial procedures, allowing meritorious claims to advance and weeding out unsupported claims. *See generally* Mark A. Behrens, 26 T.M. Cooley L. Rev 721, 747-55 (2009) (describing the progress in MDL 875 and Judge Robreno's efforts with respect to discovery, and the dismissal of fraudulent claims, especially where there were fabricated doctors' diagnoses).

## A. AO 12

In September 2009, soon after MDL 875 was assigned to him, Judge Robreno issued an amended AO 12. App. at 11-16. Amended AO 12 required plaintiffs to submit, *inter alia*, medical reports "upon which the plaintiff now relies for the prosecution of the claims as if to withstand a dispositive motion." *Id.* at 12-13. Specifically, Amended AO 12 required that:

> Each plaintiff asserting a claim based upon an alleged asbestos-related **malignancy** shall submit to the court a copy of the medical

---

[2]*See also Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Nov. 18, 1986) (entering a pretrial order that required plaintiffs to provide facts in support of their claims through expert reports or risk having their cases dismissed); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (noting that *Lone Pine* case management orders "are designed to handle the complex issues and potential burdens of defendants and the court in mass tort litigation").

> diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claims as if to withstand a dispositive motion.
>
> Each plaintiff asserting a claim based upon an alleged **non-malignant** injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.
>
> Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

*Id.* at 13 (emphasis in original).[3]

Finally, Amended AO 12 (hereafter "AO 12") provided that "[t]he court may dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth." *Id.* at 14.

---

[3]Some cases were supported only by medical diagnoses that were the results of "mass screenings." With respect to those cases, AO 12 stated that "mass screenings create an inherent suspicion as to their reliability," and that "[t]his court will therefore entertain motions and conduct such hearings as may be necessary to resolve questions of evidentiary sufficiency in non-malignant cases supported only by the results of mass screenings which allegedly fail to comport with acceptable screening standards." App. at 14.

## B. November 2011 Order

On November 14, 2011, Judge Robreno issued an order dismissing forty-seven CVLO cases for failure to comply with AO 12 ("November 2011 Order"). App. 19-39. Of those cases dismissed, nineteen were dismissed for failure to provide sufficient AO 12 reports with respect to exposure history and twenty-four cases were dismissed for failure to show an asbestos-related impairment. *Id.* at 29-39. In the November 2011 Order, Judge Robreno referred to the six *Poulis* factors that a court should consider before dismissing a case pursuant to Rule 41(b). *Id.* at 21-22.

Although the plain language of AO 12 does not state that plaintiffs must provide a complete exposure history, the District Court based its dismissal of cases that failed to include such information "on the language in AO 12 that emphasizes that plaintiffs should submit medical diagnosis or opinions based on medically accepted principles and practices, and based on statements from reputable medical organizations that require occupational and environmental exposure history when screening for asbestos-related diseases." *Id.* at 33. Accordingly, the District Court required AO 12 submissions to comply with "generally accepted medical standards [that] call for information regarding duration, intensity, time of onset, and setting of exposure to asbestos." *Id.* at 31 (internal quotation marks and citation omitted).

14

Furthermore, the District Court interpreted AO 12 to require "the medical evidence presented by Plaintiff [to] contain a diagnosis of a symptomatic asbestos-related disease." *Id.* at 34. The District Court therefore dismissed claims that were supported by AO 12 submissions that included only diagnoses of pleural plaques and pleural thickening. *Id.* at 34.

### C. Rule 41(b) Motions to Dismiss and March 2012 Order

A series of Rule 41(b) motions to dismiss the cases before us on appeal were filed between October 28, 2011 and December 28, 2011, in which Defendants argued that – considering the District Court's November 2011 Order – the claims must be dismissed for failure to comply with AO 12.[4]

---

[4]Rule 41(b) of the Federal Rules of Civil Procedure states that:

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

A Rule 41(b) dismissal may be entered *sua sponte* or on motion of a party. *Pickel v. United States*, 746 F.2d 176, 182

Plaintiffs submitted briefs in opposition to Defendants' motions, arguing that AO 12 did not require complete exposure history, and alternatively, that dismissal was not warranted under *Poulis*. At no point did Plaintiffs offer supplemental AO 12 submissions with more complete exposure histories.

After Defendants submitted their motions to dismiss and Plaintiffs filed their opposition, the District Court issued an Order on March 12, 2012.[5] The District Court dismissed *Arendt*, *Brix*, and *Burzynski* for failure to show an asbestos-related disease. App. at 50. The District Court also dismissed *Arendt* and *Brix* as to Defendant General Electric because Plaintiffs failed to serve the AO 12 submissions on it. *Id.* at 48. The District Court dismissed *Stafford*, *Michels*, *Ostrand*, *Wright*, *Zerbel*, *Hansen*, *Morris*, *Repischak*, and *Duffey* for failing to provide a sufficient history of asbestos exposure. *Id.* at 45-47. In the March 2012 Order, the District Court adopted its reasoning in the November 2011 Order, and also noted that "[w]ithout evidence of an exposure history for each plaintiff and a medical diagnosis that allows defendants and the Court to sort through, for example, which plaintiffs allegedly were exposed to whose asbestos at which locations,

---

n.7 (3d Cir. 1984) (citing *Link v. Wabash R.R.*, 370 U.S. 626 (1962)).

[5]One case in the present appeal, *Stafford v. AW Chesterton Company*, No. 11 Civ. 63497, was dismissed with prejudice by Order dated January 3, 2012. In that case, the District Court granted Defendants' motion to dismiss pursuant to Rule 41(b) "for the reasons outlined in this Court's Memorandum Opinion of November 14, 2011." Doc. No. 240.

the litigation of thousands of cases could not go forward." *Id.* at 42 n.2.

Plaintiffs' timely appeal followed. Plaintiffs advance two arguments on appeal: (1) that the District Court incorrectly held that Plaintiffs' AO 12 submissions were deficient; and (2) that the District Court erred in dismissing Plaintiffs' cases with prejudice under Rule 41(b) for failing to comply with AO 12.

## II. Standard of Review

We review a district court's interpretation of its own orders with deference, particularly in the MDL context. *See, e.g., Gibbs v. Frank*, 500 F.3d 202, 206 (3d Cir. 2007) ("We review a district court's interpretation of its own order for abuse of discretion."); *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009) (observing, in MDL, that "[d]istrict judges must have authority to manage their dockets, especially during a massive litigation such as this, and we owe deference to their decisions whether and how to enforce the deadlines they impose").[6]

We review the District Court's dismissal pursuant to Rule 41(b) for an abuse of discretion. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002).

---

[6]Appellants made much of the standard of review in their briefs, insisting that the District Court's interpretation of AO 12 should be reviewed *de novo*. Appellants did not support this argument with case law, however, and largely abandoned it at oral argument.

17

### III. Discussion

We note at the outset that these cases were transferred to the Eastern District of Pennsylvania as a result of the centralization of all asbestos-related cases by the Judicial Panel on Multidistrict Litigation. The goal of the multidistrict litigation process is to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact" that are pending in different districts. 28 U.S.C. § 1407(a); *see also In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1231 (9th Cir. 2006) (observing that when similar cases are coordinated for pretrial purposes, those cases are more likely to proceed toward resolution on the merits with less burden and expense overall than if each were litigated separately).

To that end, Judge Robreno has been diligently overseeing pretrial procedures in the asbestos-related cases since he inherited this MDL in 2009, including issuing administrative orders to streamline discovery. While the specific form of MDL proceedings does not alter the substantive rights of the litigants, it has nonetheless caused courts of appeals to acknowledge the increased burden imposed on judges handling these cases, and to consider these demands in applying the "abuse of discretion" standard, as we discuss more fully below.

We also note that dismissal with prejudice is a drastic remedy and we must be assured that it was not ordered arbitrarily. The history of the proceedings leading up to dismissal, as discussed above, is therefore very important.

#### A. Compliance with AO 12

### 1. Complete Exposure History

Plaintiffs expended much of their energy before the District Court urging that the District Court's interpretation of AO 12, as set forth at length in its November 2011 Order, was incorrect for requiring a complete exposure history. They continue to press this argument on appeal. Plaintiffs insist that AO 12 did not require a complete exposure history – rather, Plaintiffs contend that indicating the nature and duration of a claimant's work, as well as general allegations of exposure history, should suffice. *See, e.g.,* App. at 301-14 (discussing Plaintiff Barry Wright, who "worked primarily as a painter in the state of Illinois between the years of 1966 and 1991" and "has a history of having been exposed to asbestos and asbestos dust during the above mentioned period").

The language of AO 12 is broad. While this broad language could support other interpretations – including the one urged by Plaintiffs – we see no reason not to defer to the District Court's interpretation of AO 12 that requires plaintiffs' submissions to include asbestos exposure history. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006) (noting that "we normally give great deference to a court's interpretation of its own orders"); *see also Negron-Almeda v. Santiago*, 528 F.3d 15, 22-23 (1st Cir. 2008) (explaining that district court orders are "of considerable import" and that "a reviewing court can comb relevant parts of the record to discern the authoring court's intention"); *United States v. Davis*, 261 F.3d 1, 58-59 (1st Cir. 2001) ("We defer to [the district court's interpretation its own case management order] because the district court was uniquely positioned to explain the meaning of its own pretrial order.").

In this case, the District Court resolved any ambiguity as to the requirements of AO 12 in its November 2011 Order. As detailed in the November 2011 Order, the District Court believed that ordering plaintiffs to submit a "medical diagnosing report or opinion" that was "based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion," App. at 13, meant that plaintiffs must include exposure history so as to comply with "generally accepted medical standards [that] call for information regarding duration, intensity, time of onset, and setting of exposure to asbestos," *id.* at 31. Indeed, the District Court specifically noted in its November 2011 Order that accredited health organizations require exposure history in screening for and diagnosing asbestos-related diseases. For instance, as noted by the District Court, the Association of Occupational and Environmental Clinics stated that "[a]n appropriate screening program for asbestos-related lung diseases includes properly chosen and interpreted chest films, reviewed within one week of screening; **a complete exposure history**; symptom review; standardized spirometry; and physical examination." *Id.* at 32 (emphasis in original; citation omitted). Additionally, the American Thoracic Society noted that "[i]t is essential to take a comprehensive occupational and environmental history when asbestos-related disease is suspected. The occupational history should emphasize occupational and environmental opportunities for exposure that occurred about 15 years and more before presentation." *Id.* at 33.

Accordingly, based on the language in AO 12 that requires plaintiffs to submit medical diagnoses or opinions based on objective and subjective data, as well as statements from reputable medical organizations that emphasize the

importance of exposure history, the District Court interpreted AO 12 submissions to include exposure history.[7]  Although the broad language of AO 12 could support different interpretations, it does not strike us as an abuse of discretion – especially given the District Court's experience overseeing these proceedings – to require a "complete occupational and environmental exposure history when asbestos-related disease is suspected." *Id.  Cf. In re USA Commercial Mortg. Co.*, 452 F. App'x 715, 720 (9th Cir. 2011) ("Indeed, in light of its experience overseeing these proceedings, the district court is entitled to broad deference in interpreting whether the provisions of its own orders have been satisfied."). Presumably, the thousands of other AO 12 submissions for cases pending in the MDL are supported by more detailed, and thus satisfactory, exposure histories.

Plaintiffs' arguments before us track those they made before the District Court, and they fare no better here. Plaintiffs do not deny that their AO 12 submissions lack exposure history.  Rather, they focus their argument on insisting that AO 12 did not require what the District Court said it did, advancing an argument – relegated to the last

---

[7]The District Court clearly believed that this applied to *all* cases; Plaintiffs disagree and urge that requiring a detailed occupational and environmental exposure history was required only in nonmalignant "mass screening" cases.  While reasonable minds might differ as to the clarity of AO 12 on this point, it became clear to counsel representing Plaintiffs on November 14, 2011 that this was how the District Court interpreted the requirements of AO 12.  Indeed, Defendant Bechtel, two days later, filed its motion to dismiss the instant cases based on that reading.

21

pages of their brief on appeal – that dismissal was not warranted and that they should be permitted to amend their submissions. However, Plaintiffs could have supplemented their submissions to comply with the District Court's requirements at any time during the several months before the District Court's issuance of its March 2012 Order. No amendments were attached to their responses to Defendants' 41(b) motions, nor were amendments ever filed. Three months later, the District Court, consistent with its prior order, entered the March 2012 Order dismissing these cases.

Because we cannot conclude that the District Court abused its discretion by interpreting AO 12 to require a complete exposure history, and because Plaintiffs' AO 12 submissions do not include complete exposure histories, Plaintiffs' argument fails.

## 2. Asbestos-Related Disease

The District Court also dismissed the *Arendt*, *Brix*, and *Burzynski* cases for failure to show an asbestos-related disease as required by AO 12. The District Court specified the meaning of "asbestos-related disease" in its November 2011 Order. After surveying state law and doctrinal trends, the District Court concluded that plaintiffs whose AO 12 submissions showed only "pleural plaques and pleural thickening, but no 'asbestos-related disease' or 'cognizable asbestos-related injury'" did not satisfy the requirements of AO 12. App. at 34. Rather, "to satisfy AO 12, the medical evidence presented by Plaintiff must contain a diagnosis of a symptomatic asbestos-related disease." *Id.*

22

On appeal, Plaintiffs do not argue that the District Court erred in its interpretation of AO 12 in this regard – in fact, they concede that the AO 12 submissions in the *Brix* and *Burzynski* cases did not demonstrate diagnosis of a symptomatic asbestos-related disease. However, Plaintiffs argue that the AO 12 submission in *Arendt* did, in fact, show such a diagnosis.

The AO 12 submission in *Arendt* included one chest scan that suggested "bilateral apical pleural thickening" and "small right-sided pleural effusion." *Id.* at 81. This was, evidently, the only medical record submitted in connection with the AO 12 submission. *Id.* at 81-84. While Plaintiff made other submissions to the "IKON repository" that included arguably more thorough diagnosing information, *id.* at 86-145, these documents were not included in Plaintiff's AO 12 submission.

Because, as the District Court concluded in its November 2011 Order, "pleural thickening" does not satisfy AO 12's requirement of showing an asbestos-related disease, and Plaintiff's AO 12 submission discusses only "pleural thickening," the District Court did not err in concluding that Plaintiff's AO 12 submissions in *Arendt*, *Brix*, and *Burzynski* were deficient.[8]

---

[8]We need not address Plaintiffs' arguments as to dismissal against Defendant General Electric, as we conclude that the District Court properly dismissed *Arendt* and *Brix* for failing to comply with AO 12.

## B. Dismissal With Prejudice

In an apparent last ditch argument, Plaintiffs urge that the District Court erred in dismissing Plaintiffs' cases with prejudice because it did not properly consider the *Poulis* factors. As stated above, we review dismissals under Rule 41(b) for abuse of discretion. *Emerson*, 296 F.3d at 190. To determine if the District Court abused its discretion in dismissing a case under Rule 41(b), we review the manner in which it balanced the six factors enumerated in *Poulis v. State Farm Fire and Casualty Company*. *See Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986) ("In determining whether a district court has abused its discretion in dismissing a complaint . . . we will be guided by the manner in which the court balanced the *Poulis* factors and whether the record supports its findings."). Those factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions other than dismissal; and (6) the meritoriousness of the claim or defense. *Poulis*, 747 F.2d at 868. We have required district courts to consider these factors because dismissal with prejudice is, undeniably, a drastic sanction. *See United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir. 2003) (noting that the district court should have considered all six *Poulis* factors before dismissing claim as a discovery sanction).

We have noted in the past that there is no "magic formula" or "mechanical calculation" with regard to *Poulis* analysis. *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008). In fact, "'no single *Poulis* factor is dispositive,' [and] we have also made it clear that 'not all of the *Poulis* factors need be satisfied in order to dismiss a complaint.'" *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) and *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)). However, a district court's ability under Rule 41(b) "to prevent undue delays and to achieve the orderly disposition of cases must be weighed against the policy of law which favors disposition of litigation on its merits." *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974). While consideration of the *Poulis* factors can help strike that balance, "[n]o precise rule can be laid down as to what circumstances justify a dismissal for failure to prosecute, but the procedural history of each case must be examined in order to make that determination." *Id.*

With that in mind, it bears noting that district judges "must have authority to manage their dockets, especially during [a] massive litigation." *Fannie Mae*, 552 F.3d at 823. As the Ninth Circuit recognized, "administering cases in multidistrict litigation is different from administering cases on a routine docket." *In re Phenylpropalomine (PPA)*, 460 F.3d at 1229. Accordingly, in complex cases, district courts must have wide discretion to manage "complex issues and potential burdens on defendants and the court" – namely, as the Fifth Circuit recognized, through managing discovery. *Acuna*, 200 F.3d at 340-41 (noting that in case where approximately 1600 plaintiffs sued over 100 defendants for a range of injuries occurring over a span of up to forty years, it was "within the court's discretion to take steps to manage the complex and

25

potentially very burdensome discovery that the cases would require").

Moreover, the parties' compliance with case management orders is essential in a complex litigation such as this. In the words of the Ninth Circuit:

> Multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.

*In re Phenylpropalomine (PPA)*, 460 F.3d at 1232. Thus, a sprawling multidistrict matter such as this presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407(a) (permitting transfers of actions "for the convenience of parties and witnesses and [for] just and efficient conduct of such actions"). At the same time, efficiency must not be achieved at the expense of preventing meritorious claims from going forward.

District courts have analyzed the *Poulis* factors when, as in *Poulis* itself, it dismisses a case *sua sponte*, as well as in

26

cases like this, where the plaintiffs were put on notice by a motion that dismissal was being sought, and given the opportunity to oppose the motion. We have not previously considered whether, and if so how, the two situations may differ with respect to the *Poulis* analysis, but we take this opportunity to do so now.

We touched upon the distinction in *Briscoe v. Klaus* when we observed that "it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis." 538 F.3d at 258. We warned that district courts must "use caution" in using Rule 41(b) to dismiss cases *sua sponte*, "because it may not have acquired knowledge of the facts it needs to make an informed decision." *Id.* We found it particularly important for the district court to "provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders prior to dismissing a case sua sponte." *Id.*

One way a plaintiff has "a full and fair opportunity to be heard regarding his failure to comply with the court's orders," *id.* at 264, is by opposing a defendant's motion for dismissal under Rule 41(b). In such a situation, the plaintiff has every incentive to "explain his reasons for failing to prosecute the case or comply with [the district court's] orders." *Id.* The concerns that are present when a district court dismisses a case *sua sponte* without giving the plaintiff an opportunity to present arguments against dismissal are lessened when dismissal is a result of a fully briefed motion. This is particularly true when the district judge has already elucidated his interpretation of a case management order and has warned the parties that failure to comply with the order

27

could result in dismissal, and especially in the MDL context, when the district judge is overseeing several thousand cases.

Keeping these concerns in mind, we will not hesitate to remand a case to the district court when the judge dismisses a case *sua sponte* without an indication that *Poulis* was considered. We have done so in the past. *See, e.g., id.* at 263-64 ("[W]here, as here, the District Court does not have the facts necessary to conduct a full analysis of the *Poulis* factors, it is not appropriate for the District Court to dismiss a plaintiff's case sua sponte."). However, we believe we should view dismissals following a contested motion somewhat differently. The dismissal here was entered after an adversary vetting of its propriety – after a motion and a response to that motion – so our approach can be more measured, since the parties have had the opportunity to present the facts and the arguments. Here we believe the District Court weighed the arguments advanced by the parties along the lines of *Poulis*. In the context of a massive multidistrict litigation, our ability to satisfy ourselves that the district court did not act arbitrarily, and did consider the relevant factors, is made easier when the dismissal resulted from the defendant's motion and was challenged by the plaintiff before the district court ruled.

Here, Judge Robreno clearly considered the applicability of *Poulis*. Not only did he discuss the *Poulis* factors in the November 2011 Order, but the parties also addressed them fully in their briefs. While Judge Robreno did not explicitly weigh all of the factors in his March 2012 Order, he signaled his view as to the egregiousness of the dilatoriness and prejudice aspects. App. at 41 n.2. He noted that Plaintiffs were essentially holding up the progress of the

28

cases notwithstanding the District Court's having issued a clear order. *Id.* Moreover, by not coming forth with a diagnosis supplemented by a complete exposure history that could withstand a motion to dismiss, Plaintiffs were preventing the District Court from being able to decide whether the claims were meritorious. *Cf. Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 832 (9th Cir. 2011) (affirming district court's dismissal of several hundred plaintiffs in complex environmental litigation where plaintiffs failed to comply with district court's order to submit questionnaire after district court extended deadline several times and plaintiffs were warned that the district court would dismiss any party who failed to file by the extended deadlines).

Once the District Court made clear the way in which it viewed the diagnostic information required, counsel – who were also counsel to forty-seven plaintiffs whose cases had been dismissed pursuant to the November 2011 Order – were on notice that their submissions were deficient. The very motions filed by Defendants in this case sought dismissal on the basis of the District Court's November 2011 Order. Yet Plaintiffs chose the strategy of arguing to the contrary, in seeming denial, while the consequences of doing so – in light of the dismissals previously ordered in November 2011 – were quite clear, and admittedly drastic.

Judge Robreno's ruling was not the product of a clash of wills in a solitary case. Nor was it precipitous. It was, instead, typical of the interplay of Rule 41(b) in the context of the management of multidistrict litigation. Rule 41(b) is intended to allow judges to enforce orders pertaining to the progress of their cases. Nowhere is this more important, in

terms of the degree of difficulty and the impact, than in multidistrict litigation cases, where the very purpose of the centralization before the transferee judge is the efficient progress of the cases in preparation for trial.

Here, we have little difficulty concluding that the District Court considered and weighed the factors, viewing the dilatory and prejudicial aspects as outweighing all others. Moreover, as noted above, the flaw in the submissions went to the very heart of the "meritorious" aspect, making the weighing of that factor impossible. Thus, we will affirm the District Court's dismissal with prejudice of the claims in the instant appeal.