NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1407
_____

WELLS FARGO BANK N.A., successor by merger to Wells Fargo Bank Minnesota,
N.A.,
as Trustee for Morgan Stanley Capital I Trust ,Commercial Mortgage Pass-Through
Certificates, Series 2003-IQ4

v.

ASHLEY BUSINESS PARK LLC; BARRY GOTTEHRER; ASHLEY POLYMERS
INC;
JONATHAN SCHULTZ, Receiver for real property known as 570 South Avenue East
Cranford, New Jersey


WELLS FARGO BANK N.A.; JONATHAN SCHULTZ,
Appellants

On Appeal from the United States District Court for the District of New Jersey

(D.C. Civil No. 2-10-cv-06321)
District Judge:  Honorable Esther Salas

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 31, 2013

Before:  McKEE, *Chief Judge*, FISHER and SLOVITER, *Circuit Judges*.

(Filed: November 20, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Plaintiff Wells Fargo Bank ("Wells Fargo") appeals from an order by the U.S. District Court for the District of New Jersey directing the court-appointed Receiver in this case to make a payment on an agreement entered into by Defendant Ashley Business Park LLC ("Ashley") prior to the commencement of the underlying mortgage foreclosure proceedings. Ashley entered into a leasing agreement with Newmark Associates ("Newmark") in an effort to secure tenants for an office park (the "mortgaged property") owned by Ashley at that time. Newmark sought payment under the agreement, and the District Court ordered the Receiver to make the payment following the sale of the mortgaged property pursuant to a Consent Sales Order. Wells Fargo challenges that order, and we will affirm.

## I.

We write principally for the parties, [1] who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Ashley owned the mortgaged property and Wells Fargo held the Note secured by the mortgage thereto. Wells Fargo commenced the underlying mortgage foreclosure

---

[1] The Court notes that no party has entered an appearance as appellee in the present appeal.

action after Ashley failed to make the monthly mortgage payments due in July 2010 and thereafter.

Prior to the foreclosure action, in December 2008, Ashley entered into a brokerage agreement with Newmark. The brokerage agreement provided that Ashley would pay Newmark a commission in installments in exchange for Newmark obtaining Premier Urology as a tenant for the mortgaged property. Premier Urology became a tenant in 2008. Prior to entry into the brokerage agreement, Ashley assigned its rights to rents collected from the mortgaged property to Wells Fargo's predecessor, Morgan Stanley Dean Witter Mortgage Capital, Inc. The interest in rents was subsequently assigned to Wells Fargo.

Following the commencement of the foreclosure action, Wells Fargo asked the District Court to appoint a receiver. The District Court granted the motion, and appointed Jonathan Schultz as Receiver on April 25, 2011. The Receiver order contained several provisions outlining the Receiver's duties and responsibilities, including the requirement that he "manage, oversee and operate" the property, and "do all things necessary or proper for the due care and proper management" of the property. App. at 300-02. These duties included paying "all current and actual operating expenses" for the property. *Id.* at 305.

The parties engaged in settlement discussions and ultimately entered into the Consent Sales Order on May 1, 2012. The Consent Sales Order provided that the

3

mortgaged property would be sold if it could be sold for $7.5 million or more. The Consent Sales Order further provided that the parties would release each other and the action would be dismissed upon closing of the sale. In the event that the sale price was less than the agreed-upon damages of approximately $12.7 million, the Consent Sales Order provided that Wells Fargo would be entitled to the balance in the Receiver's account up to and including the amount of those damages. The mortgaged property was sold on January 30, 2013 for $8.2 million.

After the Receiver was appointed, some of the commission installments came due to Newmark. Newmark's attorneys wrote a letter to counsel for the Receiver in an effort to collect those past-due commissions. The demand was rejected. Newmark commenced a state court action against Ashley seeking to recover on the brokerage agreement. Newmark moved for summary judgment in the state court action, at which time Ashley asked the District Court for clarification of the Receiver order and an order directing the Receiver to pay Newmark. The District Court granted the motion.

The District Court viewed the issue as one of equity, and concluded that the payment to Newmark fell within the scope of the Receiver's duties as an "expense or cost necessary to operate the [mortgaged] property." App. at 3. The primary thrust of the District Court's conclusion was that Premier Urology continues to be a tenant, and Wells Fargo therefore continues to benefit from the brokerage agreement by way of continuing to receive rent. This timely appeal followed.

4

II.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331.

We have appellate jurisdiction under 28 U.S.C. § 1291.[2]

This Court gives "great deference" to a district court's interpretation of its own

orders. *In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 244 (3d Cir. 2013) (citing

*DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006)); *Gibbs v. Frank*, 500 F.3d 202,

206 (3d Cir. 2007). In affording such deference, we apply an abuse of discretion standard.

*See DirecTV*, 467 F.3d at 847 (acknowledging that the district court abused its discretion

in interpreting its own order). Because we are tasked with reviewing the District Court's

interpretation of its own order (the order appointing the Receiver), the abuse of discretion

standard applies. *In re Asbestos Prods. Liab. Litig.*, 718 F.3d at 244.

III.

Wells Fargo argues that the District Court improperly: (A) interpreted the terms

of the Receiver order; (B) elevated Newmark's unsecured claim above Wells Fargo's

---

[2] Wells Fargo briefed the issue of appellate jurisdiction, and we conclude that the Court may exercise jurisdiction pursuant to 28 U.S.C. § 1291. Courts are to consider the finality requirement of post-judgment orders pragmatically. *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir. 1986). Because the Consent Sales Order provided that the case would be dismissed when the mortgaged property was sold (which occurred on January 30, 2013), and the District Court marked the case "closed," there is nothing further for the District Court to do to make the order final. The order is appealable, therefore, pursuant to § 1291. *See id.*

secured claim; and (C) ordered the use of rents that no longer belonged to Ashley, in violation of our holding in *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir. 1995). We address each argument below.

## A.

The District Court did not abuse its discretion in interpreting the Receiver order and ordering the Receiver to pay Newmark. When interpreting its own order, a court generally looks to the "'four corners' of the document." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.3d 277, 286 (3d Cir.), *cert. denied*, 502 U.S. 939 (1991) (citation omitted).

The terms of the Receiver order permit the Receiver to "manage, oversee and operate" the property, and to "do all things necessary or proper for the due care and proper management" of the property. App. at 300-02. Pursuant to this requirement, the order mandates that the Receiver pay "all current and actual operating expenses" of the property. *Id.* at 305. Paragraph 2(j), on the other hand, permits the Receiver to employ "leasing agents," but limits the expenditure on such agents to $2,500. Wells Fargo argues that requiring the Receiver to pay much more than that to Newmark (the amount due is in excess of $145,000) would be an absurd reading of the order because it far exceeds the amount that the Receiver could spend on the same services on his own. Wells Fargo also contends that since the Receiver did not enter into the brokerage agreement, he is not obligated to make the payment as part of his administrative duties.

6

Contrary to Wells Fargo's contention that the Receiver order applies to only those actions taken after the Receiver's appointment, Paragraph 2(c) permits the Receiver to "renew and/or modify" leases with tenants. In some cases, including the lease with Premier Urology, those duties stem from obligations incurred prior to the Receiver's appointment. The Receiver order also permits the Receiver to "do all things necessary or proper for the due care and proper management of the Mortgaged Property." App. at 302. Wells Fargo's argument is contradicted by the plain language of the Receiver order, therefore, because the order envisions that the Receiver may undertake activities related to obligations—such as the leasing agreement with Newmark—incurred prior to his appointment.

Wells Fargo also contends that the payment to Newmark was not made pursuant to the Receiver's discretion[3] because it was court-ordered. Ashley's request for clarification, however, sought an interpretation of the Receiver order, as permitted by Paragraph 12.[4] Even if the Receiver order as initially drafted did not explicitly contain the authority to make such a payment, the District Court confirmed the Receiver's authority to do so by interpreting the order and providing instructions about the

---

[3] Paragraph 8 of the Receiver order provides that the Receiver "shall pay the following items [including necessary operating costs] *incurred at its discretion*." App. at 305 (emphasis added).

[4] Paragraph 12 of the Receiver order provides, in pertinent part, that "[a]t any time during the pendency of this action, any party in interest hereto may … apply to the Court for further or other instructions with respect to the Receiver's powers and duties pursuant to this Order and/or the acts or omissions of the Receiver in fulfilling those duties." App. at 307.

7

Receiver's powers and duties.  This interpretation of the order was authorized by Paragraph 8(a), which permits the Receiver to make payments for "any other items of expense or cost necessary to operate the Mortgaged Property," App. at 305, as well as Paragraph 2(i), which does not require discretion and which orders the Receiver to "do all things necessary or proper for the due care and proper management of the Mortgaged Property." *Id.* at 302.  The District Court's order was therefore not an abuse of discretion in light of its ability to interpret the Receiver's powers and duties.

Finally, Wells Fargo's reliance on Paragraph 2(j), which limits the Receiver's ability to hire leasing agents to $2,500, is likewise misplaced.  That provision states nothing about brokerage agreements entered into *prior to* the Receiver's appointment.  Wells Fargo asks the court to infer that simply because the Receiver's authority to enter into new contracts was limited after his appointment, he should not be required to make payments in satisfaction of earlier agreements.  This is not a reasonable interpretation of the order.  Instead, the District Court properly concluded that the payments due to Newmark were part of the "current and actual operating expenses" of the property, and thus subject to payment by the Receiver.  The District Court also correctly evaluated the equities of the situation in concluding that the Receiver should pay Newmark.  Wells Fargo continues to receive substantial rent payments from the tenant Newmark secured, and it should not be permitted to avoid paying for a benefit that it continues to receive.  Because this interpretation is reasonable, the District Court did not abuse its discretion.

B.

Wells Fargo argues that the District Court's order elevates Newmark's unsecured claim above the secured claim it held as the mortgagee in the underlying foreclosure action. Relying on New Jersey's race-notice recording statute, Wells Fargo asserts that both Newmark and Ashley were subordinate creditors because the mortgage and rent assignment were both recorded several years before the date of the brokerage agreement. As a corollary to this argument, Wells Fargo insists that equitable principles should not permit Newmark to trump Wells Fargo's position as a secured creditor.[5]

The Consent Sales Order provides in Paragraph 1 that the sale of the mortgaged property has "the same force and effect of a foreclosure sale of the Property pursuant to a duly issued writ of execution, issued after the entry of a final judgment and foreclosure, in accordance with Federal and New Jersey law." App. at 325. Paragraph 15 of the Consent Sales Order further provides:

> The Property to be sold and transferred by the Receiver pursuant to this Order shall be sold and transferred free and clear of all of the following liens, claims, and interests, each of which shall be deemed discharged and of no further force or effect as to the Property following the Closing of such sale, and of no further force or effect as to the property: (i) all liens, encumbrances, claims, security interests and other interests that are junior in priority to Plaintiff's mortgage lien and security interests, including, without limitation, the Defendants' interests in and to the property and any and all rights of redemption; (ii) any and all junior encumbrances which

---

[5] As noted before the District Court, Newmark is not even a judgment creditor at this stage since the claim has not been reduced to a judgment against Ashley. App. at 450-51. Either way, Wells Fargo maintains that any claim Newmark may have is subordinate to Wells Fargo's secured mortgage interest.

9

were first recorded, filed or lodged as against the Property after the Plaintiff's recordation of its Notice of Lis Pendens on January 3, 2011; and (iii) Plaintiff's mortgage lien and security interests.

App. at 334-35. Because Paragraph 1 of the Consent Sales Order treated the sale of the mortgaged property as a foreclosure sale, any claim Newmark may have had was discharged at the time of the sale pursuant to Paragraph 15, as was Wells Fargo's security interest in the property. Both parties agreed at oral argument before the District Court that this was the case. App. at 450-51, 458-59.

The sale of the mortgaged property in this case closed on January 30, 2013, and the District Court did not enter its order directing the Receiver to pay Newmark until February 1, 2013. Since the order was entered after Newmark's claim was discharged, its claim was not improperly elevated above Wells Fargo's secured interest—which was also discharged upon closing of the sale. In light of these facts, Wells Fargo's subordination argument is moot.

C.

Wells Fargo's final argument relies almost exclusively upon this Court's decision in *Jason Realty*. *Jason Realty* stands for the proposition that, under New Jersey law, an absolute assignment of rents (and, in some circumstances, even a conditional assignment) passes title to the assignee. 59 F.3d at 427-28. Wells Fargo argues that, under the holding in *Jason Realty*, title to the rents collected by the Receiver belonged to Wells Fargo pursuant to the rent assignment. If that is the case, it argues, then those rents

cannot be used to pay an obligation incurred by Ashley. This argument, however, disregards the role of the Receiver and his duties as outlined in the Receiver order.

The Receiver is an agent of the court, not of Wells Fargo. 4 *Powell on Real Property* § 37.39 (Michael Allan Wolf ed.). Once the Receiver order was entered and the Receiver took "complete possession" of the rental income as part of the receivership estate, that income was placed under the control of the court and the Receiver. *See Pratt v. Amrex, Inc.*, 354 S.W.3d 502, 506 (Tex. App. 2011) (holding that "[n]o one, even a lienholder under a prior deed of trust, has authority to sell property held *in cusdotia legis* by a court-appointed receiver, unless the court in which the receivership is pending authorizes the sale"). "The authority of the receiver is defined by statutory provisions and by the terms of the order appointing the receiver. The receiver may find it necessary to apply to the court for further direction when an unanticipated circumstance arises." *Powell*, *supra*, § 37.39.

In the present case, Paragraph 1 of the Receiver order provides that "the Receiver shall be empowered, in his capacity as a fiduciary of the Court, to forthwith enter upon, receive and *take complete possession of the Mortgaged Property and the rents, income and profits generated ….*" App. at 300 (emphasis added). The Receiver order provides, therefore, that the rents are to be collected by the Receiver, who may then utilize those funds in furtherance of his duties pursuant to the terms of the order.

Wells Fargo's argument that it is entitled to ownership of the rents requires the Court to presume that the District Court erroneously concluded that the payment to Newmark was not in furtherance of the Receiver's duties under the Receiver order. As discussed above, however, the District Court did not abuse its discretion in concluding that the payment was a part of the "current and actual operating expenses of the Mortgaged Property." App. at 305. As such, the District Court had the authority, by virtue of the Receiver order, to determine the appropriate use of the rent money, regardless of which party had title to the rents. Because the District Court had the authority to order the Receiver to make the payment, it did not err.

## IV.

For the above stated reasons, we will affirm the District Court's order directing the Receiver to pay Newmark.