In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1333

JENNIFER DZIK,

*Plaintiff-Appellant,*

*v.*

BAYER CORPORATION, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 10-cv-20389 — **David R. Herndon**, *Judge.*

ARGUED OCTOBER 5, 2016 — DECIDED JANUARY 13, 2017

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

PER CURIAM. Jennifer Dzik challenges the dismissal of her
personal-injury suit after the law firm she retained (which
continues to represent her in this appeal) ignored a legiti-
mate discovery request for more than a year, flouted the re-
quirements of a case-management order, and failed to re-
spond to a motion to dismiss. Given these lapses, we con-
clude that the district court acted well within its discretion in
dismissing the action.

This lawsuit is one of thousands consolidated for pretrial proceedings as part of multidistrict litigation in the Southern District of Illinois. Dzik alleges that she suffered a venous thromboembolism (or "VTE," a blood clot in a deep vein) because she was using the drug Yasmin, a prescription birth control pill marketed by the defendants, a group of related pharmaceutical companies collectively known as Bayer. But medical records Dzik disclosed during discovery revealed that she last had filled a Yasmin prescription ten months before her injury. When Bayer began probing the ten-month gap, Dzik's counsel of record (Chattanooga, Tennessee, attorneys Marvin Berke and Megan England) "suggested" that her doctor had provided samples of Yasmin shortly before Dzik suffered the VTE. Bayer then requested additional medical records or even an affidavit from Dzik's doctor substantiating her use of the drug near the time of her injury.

That was in May 2014, but Dzik's counsel simply ignored Bayer's discovery request over the next fifteen months. Meanwhile, Bayer settled many of the other cases in the consolidated litigation, prompting the district court to enter a case-management order in August 2015 to resolve those still pending. That order created two tracks: Section II governed cases in which the parties could agree that further negotiations might prove fruitful, and Section III applied to all other cases. Under Section II, "counsel for any plaintiff who believes additional efforts to settle a particular VTE case may be productive" had sixty days to notify Bayer that the party wished to continue negotiations; Bayer then had thirty days to respond, and, if the parties were in agreement, the case would be stayed for sixty to ninety days to facilitate settlement. For all other cases—including VTE cases in which settlement efforts had stalled—Bayer was tasked with notifying

the plaintiff's counsel within fifty days that her lawsuit was subject to Section III. Absent a timely objection prompting movement of the case to the settlement track, a plaintiff subject to Section III had 120 days to provide Bayer with a Plaintiff Fact Sheet, certain medical and pharmacy records, and a report from an expert addressing whether Yasmin caused the plaintiff's injury. The order also specified that, for any plaintiff who failed to comply, Bayer should promptly move to dismiss with prejudice after the deadlines lapsed. Finally, the order provided for *automatic* dismissal with prejudice should any plaintiff fail to oppose, within fourteen days, a properly filed motion to dismiss.

Dzik's attorneys did not invoke Section II of the case-management order by telling Bayer that settlement talks could be productive. Instead, in September 2015 (seven weeks after entry of the case-management order) Bayer sent an e-mail notifying attorneys Berke and England that Dzik's case was subject to Section III, which obligated her either to dispute that classification or else comply with the discovery requirements in the case-management order. Berke and England did not respond.

Then on December 18, 2015, Bayer moved to dismiss several dozen cases, including Dzik's. Dzik failed to respond to that motion within the fourteen days allotted by the case-management order, and on January 11, 2016, the district court entered judgment dismissing her suit with prejudice.

Attorney Berke, who at that point had taken no action in the case for nearly two years, responded to the dismissal by filing—the very next day—a motion to set aside the dismissal. England, his co-counsel of record, is not named in that filing; instead a new lawyer, Charles Flynn, is listed with

Berke as counsel. Berke asserted that Bayer had mistakenly treated Dzik's case as one subject to Section III of the case-management order, even though, the lawyer insisted, she should be in the Section II track to allow for further settlement discussions. Moreover, Berke continued, his failure to oppose the motion to dismiss should be deemed "excusable neglect" because he had missed seeing Bayer's motion while traveling to celebrate his fiftieth wedding anniversary. Berke said nothing at all about why he had failed to oppose the Section III designation when Bayer sent its e-mail *three months* before the motion to dismiss was filed. Neither did he explain why the lawsuit had not been monitored in his absence by England or Flynn (or anyone else at the firm). Bayer opposed Dzik's effort to reinstate her lawsuit, and the district court denied her motion.

In this appeal the parties address the ruling on Dzik's postjudgment motion and the underlying dismissal of her lawsuit as if those two decisions present distinct issues, but really they do not. We address that inquiry by evaluating both rulings together, and start by noting that the affidavits submitted by Dzik's attorneys with their postjudgment motion directly contradict the sworn account provided by Bayer's counsel. Along with the anniversary-trip excuse, Berke attests in his affidavit: "Attorneys from Affiant's office have been in contact with liaison counsel within the last 90 days. After these discussions Affiant determined that an additional medical record was needed and has proceeded to try to obtain that." Flynn (the other attorney whose name appears on the postjudgment motion) likewise attests in his affidavit that "attorneys" from his office had negotiated the case within the previous ninety days, and that he "did not receive" an electronic notice that Bayer's motion to dismiss

had been filed (the second representation undoubtedly is true, since even now Flynn has not entered an appearance in the district court).

An attorney with Shook Hardy & Bacon, Bayer's settlement counsel, responded with an affidavit recounting that Dzik's lawyers never responded after Bayer had requested additional medical records or an affidavit from her physician substantiating Dzik's use of Yasmin. The lawyer gave a precise date in May 2014—nearly two years before the case was dismissed—when communication with Dzik's lawyers last occurred. Bayer's lawyer also named the attorney at his firm who had sent Berke the e-mail requesting evidence that Dzik used Yasmin after filling the final prescription. And the lawyer swore that his firm had not received "further communication of any kind from plaintiffs prior to the filing of their motion for relief from the judgment." Moreover, Bayer's lawyer attested that, before submitting his affidavit, he had "reviewed our records and discussed the matter with other attorneys at my firm to confirm my recollection of the history of negotiations." Berke replied to Bayer's response but said nothing further in the district court about his sworn representation that his firm's "attorneys" had communicated with Bayer's defense team within ninety days of dismissal. Yet at oral argument when we pressed Berke to tell us whether his firm had taken *any* action in Dzik's lawsuit in the eighteen months preceding its dismissal, he revived his assertion that communications had taken place between the parties' lawyers, though he did not name any lawyer for either side who supposedly had participated. Instead he told us that there is "no question" that negotiations had taken place within ninety days of dismissal, and he even went so

far as to assert that *both* sides' affidavits say so. Plainly, the affidavit from Bayer's lawyer says no such thing.

We are troubled by the degree to which these accounts directly contradict. And though it is possible that Bayer's lawyer is mistaken, we see no reason to draw that conclusion. For one thing, Berke's firm presently has only four attorneys (two named Berke, and two named Flynn), so his inability to name the "attorneys" at the firm who purportedly negotiated with Bayer's lawyer is a red flag. It also seems that, after Megan England (Berke's original co-counsel) left the firm, Flynn never entered an appearance in the district court. Conversely, Bayer provided the district court with a detailed timeline, including the date and name of the attorney who last communicated with anyone representing Dzik. While we can't be certain that "attorneys" from Berke's firm didn't try to contact Bayer within ninety days of dismissal, the vagueness of the affidavits from plaintiff's counsel and Berke's misrepresentation at oral argument about the affidavit from Bayer's lawyer leads us to think it more likely that the case slipped through the cracks, with no attorney (or paralegal or secretary) monitoring it, leaving Berke and Flynn scrambling to salvage what their motion for reconsideration concedes was "neglect" by the firm.

What is more, the affidavits from Dzik's lawyers say nothing relevant to excuse the inattention that led to the dismissal. Berke and Flynn do not challenge Bayer's version of events, including that their firm ignored the company's May 2014 request for evidence that Dzik took Yasmin shortly before her injury. (Indeed, this discovery request never was fulfilled.) Nor have Dzik's lawyers denied that they failed to comply with the requirements of the case-

management order under *either* Section II (to affirmatively notify Bayer and engage in active negotiations) or under Section III (to provide discovery and expert reports in preparation for trial). Rather, counsel argue that Dzik's case never should have been placed in the Section III "track" because she alleges a VTE. And, they continue, the district court erred in denying the motion for relief in light of Berke's contention that his vacation constituted "excusable neglect" exonerating the law firm's inaction when Bayer moved to dismiss.

Dzik's argument that her case belonged in Section III rests on a misreading of the district court's case-management order. Dzik's lawyers assert that Section II governs all cases alleging VTE injuries and that Section III applies only to lawsuits alleging that Yasmin caused other types of injuries. But nothing in the language of the court's order could lead to this reading. Both sections of the order govern plaintiffs alleging VTE injuries; the separate "tracks" distinguish between those plaintiffs still in active negotiations and those whose cases should move toward trial because efforts were not fruitful. Dzik's argument that no case alleging a VTE injury should be subject to dismissal under Section III contradicts the unambiguous language of the order. Berke's insistence at argument that "all the lawyers" in his office have now read the case-management order but still cannot understand how Dzik's case "became" subject to Section III is preposterous—the order is crystal clear.

More disturbing is Dzik's repeated assertion to us that Bayer told the district court that she "did not suffer a VTE despite actual knowledge that she did." This representation is unfounded. Bayer never told the district court that Dzik

"did not endure a VTE," as her counsel allege. Rather, Bayer correctly represented that Dzik had not complied with the court's case-management order. Dzik's counsel had ample opportunity to dispute the "Section III" classification and, indeed, to satisfy Bayer's request—more than a year earlier—for evidence that Dzik took Yasmin near the time of her injury.

Dzik's remaining argument fares no better. She contends that her lawyers "acted in good faith towards bringing this case to a resolution" and, for that reason, the dismissal should be set aside even if we conclude that Section III of the case-management order applied. Dzik reasons that, because *Berke* was out of state when Bayer moved for dismissal, the firm's failure to respond resulted from surprise or excusable neglect. Dzik's lawyers—Berke and Flynn—explain that the job of a plaintiff's lawyer "consists of mostly nothing, sprinkled in with the occasional update to the client." Less should be expected of them, they infer, in contrast with Bayer's lawyers, who have "lived and breathed these cases."

This argument is absurd. By focusing on the three weeks during which they ignored Bayer's motion to dismiss, Berke and Flynn gloss over their failure to do *anything* to advance Dzik's case over the previous eighteen months, including not providing discovery. We have explained that "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004). And counsel have not even suggested that, if the lawsuit had not been dismissed, Dzik could have complied with Bayer's discovery demand and

substantiated their firm's representation that, despite not filling a Yasmin prescription for nearly a year preceding her injury, Dzik was still taking the drug. Their brief also fails to explain why Flynn (who, presumably, was not vacationing with Berke and his wife) was not watching the case while Berke was away. Furthermore, nearly four months elapsed between Bayer's e-mail to Dzik's counsel identifying her case as subject to Section III and the court's dismissal, yet counsel took no (documented) action during that period.

District courts handling complex, multidistrict litigation "must be given wide latitude with regard to case management" in order to achieve efficiency. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3rd Cir. 2013); *accord In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867–68 (8th Cir. 2007); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1252–53 (9th Cir. 2006). That discretion extends to dismissing individual suits for noncompliance with the court's orders, including discovery orders. *In re Guidant Corp.*, 496 F.3d at 867–68; *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1252–53. Considering that Dzik's lawyers—in their own words—did "mostly nothing" after filing this lawsuit, the district court did not abuse its discretion by dismissing the case with prejudice.

The judgment of the district court is AFFIRMED.